IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| CITY OF SEATTLE, | ) | No. 78304-1-I |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| JEFFREY LEVESQUE, | ) | PUBLISHED OPINION |
| | ) | |
| Respondent. | ) | FILED: March 16, 2020 |

SMITH, J. — This case arises from Jeffrey Levesque's appeal of his conviction for driving under the influence (DUI). During trial in Seattle Municipal Court, Officer Calvin Hinson testified that when he arrested Levesque, Levesque showed signs and symptoms consistent with having consumed a central nervous system (CNS) stimulant and was "definitely impaired." Following his conviction, Levesque appealed to the superior court, which reversed. The city of Seattle (City) appeals the superior court's decision.

We conclude that because Officer Hinson was not a drug recognition expert (DRE) and lacked otherwise sufficient training and experience, he was not qualified to opine that Levesque showed signs and symptoms consistent with having consumed a particular category of drug. Furthermore, because his opinion that Levesque was "definitely impaired" constituted an impermissible opinion of Levesque's guilt, the trial court's admission of that testimony violated Levesque's constitutional right to have the jury determine an ultimate issue. Finally, because Levesque presented an alternative theory for his behavior, the

City did not establish beyond a reasonable doubt that any reasonable jury would have convicted Levesque. Therefore, we affirm the superior court's reversal of Levesque's conviction.

FACTS

On April 29, 2015, the Seattle Police Department dispatched Officers Calvin Hinson and Sarah Coe to the scene of an automobile accident involving two vehicles. Levesque had failed to stop his vehicle prior to hitting the vehicle in front of him. The accident caused moderate to severe damage, and Levesque's vehicle could not be driven.

Officer Hinson placed Levesque under arrest for DUI. Officer Hinson later testified that he found probable cause to make the arrest based on

> the manifest driving[,] which [included] the accident while not being able to remember how the accident was caused[; t]he signs and symptoms of possible impairment of under a stimulant which included the perspiring while standing outside of the vehicle on the West Seattle Bridge while it was chilly outside and windy; the inability to recollect the events; and just the overall scene; and the conversation that we had . . . and his mannerisms and his actions.

Although Officer Hinson had received training in field sobriety tests (FSTs), he did not perform any FSTs at the scene because of Levesque's symptoms, the absence of any alcohol smell, and the location of the accident and corresponding impracticability of FSTs. Officer Hinson did not perform a horizontal gaze nystagmus (HGN) test for signs of impairment. Officer Hinson, who is not DRE certified, testified that he attempted to contact a DRE by radio, but no DRE was

available.[1]

After arresting Levesque, Officer Hinson transported Levesque to Harborview Medical Center, where he had his blood drawn. The drug analysis results showed that Levesque's blood contained 0.14 milligrams per liter (mg/L) of amphetamine and 0.55 mg/L of methamphetamine. The City charged Levesque with DUI.

Before trial, Levesque moved in limine to, among other things, (1) limit officer testimony to personal observations and (2) exclude any testifying officer's opinion on ultimate issues. The trial court granted the first motion. The trial court also granted the second motion but ruled that an officer *could* state "in his opinion, based upon the totality of the circumstances, that [Levesque] was impaired." The trial court also granted Levesque's additional motion to exclude officers as experts but declared that an officer—testifying as a lay witness—could "certainly testify to what he [or she] objectively observed during the investigation."

At trial, the City played clips of the dashboard videotape from the incident. Additionally, Officer Hinson testified that he approached Levesque at the scene and asked him what happened. Levesque responded that he remembered driving but that "nothing really happened" and that he could not remember the accident. Because Levesque did not have his driver's license, Officer Hinson asked Levesque for his address or the last four digits of his social security

---

[1] DRE certification involves in-field experience and a series of tests and training. State v. Baity, 140 Wn.2d 1, 4-5, 991 P.2d 1151 (2000). DRE officers learn to identify whether an individual is under the influence of alcohol or a particular category of drug and whether or not the individual is impaired. Baity, 140 Wn.2d at 4.

3

number to verify his identity. Levesque had difficulty responding and answered inappropriately by stating his birth date many times.

Officer Hinson testified that "through [his] training [and] experience" Levesque showed "signs as possibly being impaired by a stimulant." When asked to opine as to whether Levesque "was impaired by drugs," Officer Hinson testified that his "[o]pinion was that [Levesque] was definitely impaired at the time of the accident." Officer Coe testified that Levesque was "very shaky . . . [and] also very sweaty" and that "[s]weating is indicative of an upper involved in the system." Levesque objected to Officer Hinson's testimony—but not Officer Coe's—and requested a mistrial outside the presence of the jury following a lunch recess. The court overruled Levesque's objections.

The City also presented testimony from Captain Tracy Franks of the Seattle Fire Department and forensic scientist Andrew Gingras. Captain Franks testified that at the scene of the accident, she determined that Levesque's heart rate and blood pressure were slightly elevated but that Levesque's "pupils were mid, equal, and reactive to light." However, Captain Franks also testified that the conversation she had with Levesque "was erratic, [and] he didn't make sense." Captain Franks' report from the scene of the accident stated that Levesque "show[ed] behavior consistent with recreational drug use: Short attention span, having to ask questions multiple times, unable to open door without assistance, patient denies being in an accident."

Gingras testified regarding how methamphetamine can impact someone's driving abilities and that "while using methamphetamine . . . , driving tends to be

4

a little faster, so speeding is usually seen, and then excessive lane travel." Gingras also testified regarding the "typical therapeutic range" for methamphetamine levels in the blood and how an individual would react to methamphetamine consumption if prescribed it. Gingras testified, however, that whether a specific level of methamphetamine in the blood impairs an individual's ability to drive "depends on that individual" and agreed that "blood tests . . . [are] insufficient to establish whether someone is impaired or not."

Levesque's defense theory was that he was prescribed medication for injuries which explain his behavior. In support of this defense, Levesque presented testimony from his physician, Dr. Katherine Mayer, about treatment and prescriptions that she provided for Levesque prior to the accident, her diagnoses, and Levesque's symptoms.

The jury convicted Levesque of driving while under the influence. Levesque appealed his conviction to the superior court, which reversed based on the admission of Officer Hinson and Officer Coe's testimonies. The superior court determined that "[b]ecause neither testifying officer was a qualified [DRE] and the required 12-step DRE protocol was not performed, the foundation for this testimony was insufficient pursuant to State v. Baity, 140 Wn.2d 1[, 991 P.2d 1151] (2000)." The court also held that the errors were preserved for appeal through "litigat[ion] in pretrial motions and midtrial," and that the trial court's error admitting the testimony "was not harmless." The City appealed, and we granted discretionary review.

5

ANALYSIS

The City contends that Officer Hinson's and Officer Coe's testimonies were admissible, and thus, the superior court erred by reversing Levesque's conviction. We disagree. Specifically, reversal was proper based on the erroneous admission of Officer Hinson's testimony.

Preservation of Issues for Appeal

As an initial matter, the City claims that Levesque failed to preserve his challenges to the testimony from Officer Hinson and Officer Coe. We conclude that Levesque failed to preserve his challenge to Officer Coe's testimony but did preserve his challenge to Officer Hinson's testimony.

"The appellate court may refuse to review any claim of error which was not raised in the trial court." RAP 2.5(a). Under ER 103(a)(1), when an error is raised based on admitting evidence, the adverse party must make "a timely objection or motion to strike . . . , [and] stat[e] the specific ground of objection, if the specific ground was not apparent from the context." The purpose of these requirements is to "'encourage[ ] parties to make timely objections[ and] give[ ] the trial judge an opportunity to address an issue before it becomes an error on appeal.'" Wilcox v. Basehore, 187 Wn.2d 772, 788, 389 P.3d 531 (2017) (quoting State v. Kalebaugh, 183 Wn.2d 578, 583, 355 P.3d 253 (2015)).

Here, Levesque's objections to Officer Hinson's testimony were both timely and specific. The objections were timely because—contrary to the City's

contention that Levesque simply "bet on the verdict"[2]—Levesque objected at one of the earliest opportunities outside of the jury, i.e., at the next recess. And the objections were specific because Levesque provided the trial court with the grounds for his objection. Levesque asserted that (1) "Officer Hinson did not make the adequate foundation to testify to Mr. Levesque being impaired by a drug, when he did not conduct any DRE examination [and a] DRE wasn't called," (2) Officer Hinson's testimony violated the trial court's ruling in limine by stating that Levesque was impaired or under the influence, and (3) the testimony went to the ultimate issue in the case.

The City contends that Levesque's objections were neither timely nor specific enough and that the only issue preserved for appeal is the trial court's denial of Levesque's request for a mistrial. This contention is unpersuasive for two reasons. First, the purpose of the objection requirements is to ensure that the trial court is able to rule on the issue and provide a curative instruction. Wilcox, 187 Wn.2d at 788. Here, Levesque's objections—though not contemporaneous—do not undercut this purpose. The trial court was able to and did decide the issues presented in this appeal and did so independently of the motion for a mistrial. Specifically, the court determined that Officer Hinson did not state a legal conclusion that Levesque was under the influence, that the foundation was appropriately laid for Officer Hinson's testimony, and that his

---

[2] See State v. Burns, 193 Wn.2d 190, 209, 438 P.3d 1183 (2019) ("Applying ER 103 and requiring a defendant to object at trial 'protects the integrity of judicial proceedings by denying a defendant the opportunity to sit on his rights, bet on the verdict, and then, if the verdict is adverse, gain a retrial by asserting his rights for the first time on appeal.'" (quoting State v. O'Cain, 169 Wn. App. 228, 243, 279 P.3d 926 (2012))).

testimony did not go to the ultimate issue of Levesque's guilt. Furthermore, the court had adequate time to provide a curative instruction to the jury. Thus, the record reflects that Levesque's objections were sufficiently specific and timely to give the trial court opportunity to correct any error.

Second, the cases on which the City relies in support are distinguishable. In each case, the objecting party either provided no basis for the objection or failed to object entirely. See City of Seattle v. Carnell, 79 Wn. App. 400, 402, 902 P.2d 186 (1995) (holding that the statement "lack of a 'sufficient foundation'" without "indicat[ion of] what specific foundational requirement was lacking" is insufficient to preserve error for appeal); State v. Sullivan, 69 Wn. App. 167, 169, 173, 847 P.2d 953 (1993) (holding that because the defendant failed to object to the testimony and did not cite the testimony's admission in later motions, the error was not preserved for review on appeal); State v. Casteneda-Perez, 61 Wn. App. 354, 363, 810 P.2d 74 (1991) (holding that "calls for comment on the evidence" lacks specificity and is insufficient to preserve error for appeal); State v. Hubbard, 37 Wn. App. 137, 145, 679 P.2d 391 (1984) (holding that an objection based on a lack of foundation "with no particularity as to the nature of the deficiency" is insufficient to preserve error for appeal), rev'd on other grounds, 103 Wn.2d 570, 693 P.2d 718 (1985). But here, as discussed, Levesque timely provided the trial court with the specific grounds for his objections to Officer Hinson's testimony. Levesque thus preserved his challenge to Officer Hinson's testimony.

Levesque failed, however, to preserve his challenge to Officer Coe's

testimony because he made no objection at all. Levesque claims that his challenge was preserved because Officer Coe's testimony violated the ruling in limine to limit officer testimony to personal observations. Specifically, Levesque contends that the violation is alone adequate to preserve our review of Officer Coe's testimony. But he is incorrect: "A party is obligated to renew an objection to evidence that is the subject of a motion in limine in order to preserve the error for review." City of Bellevue v. Kravik, 69 Wn. App. 735, 742, 850 P.2d 559 (1993). Levesque also contends that his challenge was preserved because the City failed to list Officer Coe as an expert witness. But Levesque cites no authority for the proposition that he can preserve his challenge based solely on the City's exclusion of Officer Coe from its expert witness list. Therefore, we are not persuaded. See DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.").

### Admissibility of Officer Hinson's Testimony

The City claims that the superior court erred by concluding that Officer Hinson's testimony regarding Levesque's impairment by stimulants was inadmissible. Because Officer Hinson's testimony lacked sufficient foundation and because the testimony was an impermissible opinion of guilt, we disagree.

We review admission of opinion testimony for abuse of discretion. State v. Ortiz, 119 Wn.2d 294, 308, 831 P.2d 1060 (1992). And opinion testimony must be deemed admissible by the trial court before it is offered. State v.

9

Montgomery, 163 Wn.2d 577, 591, 183 P.3d 267 (2008). Opinion testimony may be admissible under ER 701 as lay testimony or ER 702 as expert testimony. However, "[w]hen opinion testimony that embraces an ultimate issue is inadmissible in a criminal trial, the testimony may constitute an impermissible opinion on guilt." State v. Quaale, 182 Wn.2d 191, 197, 340 P.3d 213 (2014) (citing City of Seattle v. Heatley, 70 Wn. App. 573, 579, 854 P.2d 658 (1993)). "Impermissible opinion testimony regarding the defendant's guilt may be reversible error." Quaale, 182 Wn.2d at 199.

Here, the opinion testimony at issue consists of Officer Hinson's statements that Levesque showed signs and symptoms of being impaired by a specific category of drug, i.e., a CNS stimulant, and that Levesque was "definitely impaired" at the time of the accident:

> [Officer Hinson:] I could see that he was perspiring. I misspoke on the in-car video. He did not have dilated pupils, he had constricted pupils which means very, very small. And, as I said, *through my training experience that I recognize as a sign[ ] as possibly being impaired by a stimulant.*
>
> . . . .
>
> [Officer Hinson:] *The signs and symptoms of possible impairment of under a stimulant* which included the perspiring while standing outside of the vehicle on the West Seattle Bridge while it was chilly outside and windy; the inability to recollect the events; and just the overall scene; and the conversation that we had between him and his mannerisms and his actions.
>
> . . . .
>
> [Prosecution]: Based on your training and experience, and all of the observations and interactions you had with Mr. Levesque on this day, did you form an opinion as to whether he was impaired by drugs?

10

[Officer Hinson]: Yes.

[Prosecution]: What is it?

[Officer Hinson]: Opinion was that he was *definitely impaired* at the time of the accident.

(Emphasis added.) As further discussed below, Officer Hinson's opinion testimony was not admissible under ER 701 or ER 702 because Officer Hinson was not qualified to opine as to whether Levesque was affected by a specific category of drugs. Furthermore, Officer Hinson's testimony that Levesque was "definitely impaired" constituted an impermissible opinion of guilt. Therefore, the trial court erred by admitting Officer Hinson's testimony.

*Officer Hinson's Testimony was Not Admissible as an Expert Opinion*

An expert witness may testify in the form of opinion or otherwise "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, [and the] witness qualifie[s] as an expert by knowledge, skill, experience, training, or education." ER 702. "Before allowing an expert to render an opinion, the trial court must find that there is an adequate foundation so that an opinion is not mere speculation, conjecture, or misleading." Johnston-Forbes v. Matsunaga, 181 Wn.2d 346, 357, 333 P.3d 388 (2014). "[E]xpert opinion evidence is usually not admissible under ER 702 unless it is based on an explanatory theory generally accepted in the scientific community." State v. Sanders, 66 Wn. App. 380, 385, 832 P.2d 1326 (1992). However, "where expert testimony does not concern sophisticated or technical matters, it need not meet the rigors of a scientific theory." Sanders, 66 Wn. App. at 385-86. To this end, the Washington Supreme Court has

"repeatedly held that 'an expert may be qualified by experience alone.'"

Johnston-Forbes, 181 Wn.2d at 355 (quoting In re Marriage of Katare, 175 Wn.2d 23, 38, 283 P.2d 546 (2012)).

We conclude that the City failed to establish that Officer Hinson was qualified under ER 702 to opine as an expert. Our Supreme Court's decision in Baity is instructive in this regard. Baity involved two consolidated DUI cases where DRE officers testified to the defendants' impairment after performing the DRE 12-step protocol. 140 Wn.2d at 6-8. The then-novel DRE protocol is used by law enforcement officers to discern whether an individual is under the influence of one of seven categories of drugs: "(1) [CNS] depressants, (2) inhalants, (3) phencyclidine (PCP), (4) cannabis, (5) CNS stimulants, (6) hallucinogens, and (7) narcotic analgesics." Baity, 140 Wn.2d at 5. The 12-step DRE protocol involves:

> "(1) breath (or blood) alcohol concentration; (2) interview of the arresting officer; (3) preliminary examination; (4) eye examinations; (5) divided attention tests; (6) vital signs examination; (7) darkroom examination of pupil size; (8) examination of muscle tone; (9) examination of injection sites; (10) statements, interrogation; (11) opinion; (12) toxicology analysis."

Baity, 140 Wn.2d at 6. The court addressed whether the DRE protocol satisfied the standard for novel scientific procedures set forth in Frye v. United States, 54 U.S. App. D.C. 46, 293 F. 1013 (1923).[3] Baity, 140 Wn.2d at 13.

The Baity court concluded that the DRE protocol satisfied the Frye standard. 140 Wn.2d at 17. In doing so, the court observed that a DRE must

---

[3] The Frye standard has been adopted in Washington as the standard for determining the admissibility of an expert opinion that is based on a novel scientific theory. State v. Copeland, 130 Wn.2d 244, 255, 922 P.2d 1304 (1996).

complete significant training and education before becoming certified, including a 16-hour "preschool" providing an overview of DRE protocol and "instruction on the seven drug categories and basic drug terminology." Baity, 140 Wn.2d at 4-5. A DRE officer must complete an additional 56 hours of DRE education, which "consists of 30 modules of instruction, including an overview of the development and validation of the drug evaluation process, and sessions on each drug category." Baity, 140 Wn.2d at 5. The program also requires practical field training, and an "officer must pass a written examination before beginning the next phase of training." Baity, 140 Wn.2d at 5. Finally, the officer must successfully complete 12 examinations, and in those examinations, be able to "identify an individual under the influence of at least three of the seven drug categories." Baity, 140 Wn.2d at 5. The officer must "obtain a minimum 75 percent toxicological corroboration rate" and pass a written test as well as skills demonstration tests. Baity, 140 Wn.2d at 5.

Our Supreme Court held that a "DRE officer, properly qualified, may express an opinion that a suspect's behavior and physical attributes are or are not consistent with the behavioral and physical signs associated with certain categories of drugs." Baity, 140 Wn.2d at 17-18. The court stated, however, that "an officer may not testify in a fashion that casts an aura of scientific certainty" and that the DRE protocol does not allow an officer to opine as to "the specific level of drugs present in a suspect." Baity, 140 Wn.2d at 17. Additionally, the court held that a DRE must still qualify as an expert under ER 702 and present a proper foundation, i.e., "a description of the DRE's training, education, and

experience in administering the test, together with a showing that the test was properly administered." Baity, 140 Wn.2d at 18. The court remanded for the trial court to determine whether the DRE properly qualified as an expert. Baity, 140 Wn.2d at 18.

Although Baity was decided in the context of determining whether the DRE protocol satisfied the Frye standard, it follows from Baity that absent other sufficient foundation testimony, an officer is not qualified to opine that a defendant's behavior is or is not consistent with that associated with a *specific category of drug* unless the officer is a DRE.

Here, it is undisputed that Officer Hinson is not a DRE. Furthermore, he lacked otherwise sufficient qualification to express an opinion that Levesque's behavior was consistent with having ingested a specific category of drug. Specifically, Officer Hinson completed only basic training and a 40-hour DUI course. And, at the time of Levesque's arrest, he had completed only 13 DUI investigations, nine of which involved drug related impairment, and most of which involved assisting a lead officer. These experiences may provide a basis for testimony that a person shows signs and symptoms consistent with drug or alcohol consumption generally or what specific symptoms were observed; they do not, however, provide a basis for opining that a person is affected by a *particular category of drug* or that the effect rises to the level of impairment. In short, and while not every expert presenting an opinion on the issue must be

14

DRE certified,[4] Officer Hinson's lack of DRE certification and minimal police experience are not sufficient to qualify him to give such an opinion. Thus, Officer Hinson's opinion testimony was not admissible as expert opinion testimony.

The City relies on State v. McPherson for the proposition that an officer may testify about a specialized or scientific matter based on experience and training alone. 111 Wn. App. 747, 46 P.3d 284 (2002). In McPherson, Detective Terry Boehmler testified as an expert on meth labs based on police training and experience alone. 111 Wn. App. at 761-62. Division Three concluded the testimony was admissible expert testimony. McPherson, 111 Wn. App. at 762. However, the McPherson court highlighted "that methamphetamine cooking is relatively easy and is done by numerous persons without a higher education." 111 Wn. App. at 762. By contrast, discerning which particular class of drug an individual's behavior is consistent with is a sophisticated and technical matter. See Baity, 140 Wn.2d at 4-5. Such testimony requires an adequate foundation for expert opinion testimony, which did not exist here. More importantly, Detective Boehmler (1) had investigated 40 to 60 meth labs in the previous six to seven months, (2) had completed DEA training and recertification, and (3) "conducted meth lab training for two local police departments." McPherson, 111 Wn. App. at 752, 762. Thus, whereas Detective Boehmler's training

---

[4] For example, "pharmacologists, optometrists, and forensic specialists" may be qualified to testify as to what specific drug impairment looks like or if, in their opinion, behavior was consistent with consumption of a particular category of drug. See Baity, 140 Wn.2d at 17; see also State v. Pirtle, 127 Wn.2d 628, 639-40, 904 P.2d 245 (1995) (A neuropharmacologist and clinical psychologists were allowed to testify as to the effect of drug abuse on the defendant's mental processes.).

15

provided a sufficient foundation for expert testimony, Officer Hinson's did not.

Finally, the City's reliance on nonbinding case law from outside of this jurisdiction is equally misplaced, and we do not address those cases. See State v. Rambo, 250 Or. App. 186, 187-88, 279 P.3d 361 (2012) (holding that a DRE expert who completed 11 of the 12 DRE steps could testify that the defendant was under the influence of a narcotic analgesic); State v. Burrow, 142 Idaho 328, 329-30, 127 P.3d 231 (2005) (holding that in an aggravated assault case, an officer could testify that the defendant showed symptoms consistent with methamphetamine or other stimulant use); United States v. Sweeney, 688 F.2d 1131, 1145 (7th Cir. 1982) (holding that an experienced methamphetamine user could testify that a substance was methamphetamine "based upon his prior use and knowledge of" it); United States v. Habibi, 783 F.3d 1, 5 (1st Cir. 2015) (holding that a Federal Bureau of Investigation special agent could testify that he investigated a case where "'an individual touched . . . a[n] object with a bare hand, but when tested, no detectable DNA was found'") (second alteration in original); Blair v. City of Evansville, 361 F. Supp. 2d 846, 850 (S.D. Ind. 2005) (allowing a security officer's testimony on security plans for a vice-presidential visit). These cases are both nonbinding and distinguishable.

*Officer Hinson's Testimony was Not Admissible as a Lay Opinion*

Having concluded that Officer Hinson's testimony was not admissible as an expert opinion, we next address whether it was admissible as a lay opinion. We conclude that it was not.

A lay opinion is admissible only if it is "rationally based on the perception

of the witness" and "not based on scientific, technical, or other specialized knowledge within the scope of rule 702." ER 701(a), (c). Put another way, lay testimony must be based on "knowledge . . . from which a reasonable lay person could rationally infer the subject matter of the offered opinion." State v. Kunze, 97 Wn. App. 832, 850, 988 P.2d 977 (1999).

As demonstrated by Baity and the very existence of the DRE protocol and program, specialized knowledge or experience is required to discern the particular category of drug by which an individual is affected absent other specialized experience or knowledge of drug impairment. And a reasonable lay person with general experience does not have knowledge from which to rationally infer that an individual is impaired by a *specific category of drug*. Thus, Officer Hinson's testimony was not admissible as a lay opinion.

The City disagrees and relies on Heatley for the proposition that Officer Hinson's testimony was an admissible expert or lay opinion. In Heatley, Officer Patricia Manning observed Robert Heatley speeding and straddling the center line with his vehicle. Heatley, 70 Wn. App. at 575. When Officer Manning pulled Heatley over, she smelled liquor and noticed that Heatley's speech was slurred and that he had difficulty balancing. Heatley, 70 Wn. App. at 575-76. Officer Manning called the Driving While Impaired (DWI) unit, and Officer Mark Evenson of the DWI unit had Heatley perform a series of FSTs: reciting the complete alphabet, counting backward from 59, balancing, and walking a straight line. Heatley, 70 Wn. App. at 576.

At trial, Officer Evenson testified that he had tested over 1,500 drivers for

impairment while driving. Heatley, 70 Wn. App. at 576.[5] He then opined:

> "Based on . . . his physical appearance and my observations . . . and based on all the tests I gave him as a whole, I determined that Mr. Heatley was obviously intoxicated and affected by the alcoholic drink . . . . [And] he could not drive a motor vehicle in a safe manner."

Heatley, 70 Wn. App. at 576. Heatley was convicted. Heatley, 70 Wn. App. at 577. On appeal, we held that Officer Evenson's testimony regarding Heatley's alcohol intoxication was admissible as lay opinion testimony based on his experience and observations. Heatley, 70 Wn. App. at 579-80. And because a lay witness may testify to a defendant's intoxication by alcohol, we also concluded Officer Evenson's testimony would have been admissible as expert testimony had he been qualified as an expert. Heatley, 70 Wn. App. at 580 ("[I]f a lay witness may express an opinion regarding the sobriety of another, there is no logic to limiting the admissibility of an opinion on intoxication when the witness is specially trained to recognize characteristics of intoxicated persons.").

But here, unlike in Heatley, Officer Hinson did not conduct *any* FSTs or other impairment tests. Instead, Officer Hinson relied solely on his general observations. More importantly, although intoxication by *alcohol* is a proper subject for lay—and thus expert—testimony, signs and symptoms of impairment by a specific category of drug is not. Indeed, as the court said in Baity, a DRE must base its opinion on the totality of the DRE 12-step evaluation "not on one element of the test," and "[w]hen in doubt, the DRE must find the driver is not under the influence." 140 Wn.2d at 6. It follows that Officer Hinson—who was

---

[5] Heatley was decided before the widespread use of DRE protocol and our Supreme Court's decision in Baity.

not a DRE and therefore could not and did not perform *any* step of the DRE protocol—should not have been permitted to testify that Levesque was affected by CNS stimulants. In short, such testimony *does* concern a sophisticated and technical matter, and without DRE certification or other sufficient foundation for the specialized testimony, Officer Hinson's opinion as to the drug by which Levesque was affected is speculation. For these reasons, Heatley and other cases involving alcohol intoxication do not control here. See, e.g., State v. Lewellyn, 78 Wn. App. 788, 794, 895 P.2d 418 (1995) (holding that "[i]t is well settled in Washington that a lay witness may express an opinion regarding the level of intoxication of another"), aff'd State v. Smith, 130 Wn.2d 215, 922 P.2d 811 (1996). Therefore, the City's argument fails.

The City also relies on Montgomery for the proposition that Officer Hinson's testimony was the proper subject of a lay opinion. In Montgomery, the court cited Heatley for the proposition that "[a] lay person's observation of intoxication is an example of permissible lay opinion." 163 Wn.2d at 591. But, as discussed, Heatley pertained to *alcohol* intoxication. As discussed, this principle does not extend to the testimony at hand because unlike the effects of a class of drugs, "[t]he effects of alcohol 'are commonly known and all persons can be presumed to draw reasonable inferences therefrom'." Heatley, 70 Wn. App. at 580 (quoting State v. Smissaert, 41 Wn. App. 813, 815, 706 P.2d 647 (1985)). A lay witness does not need an individual's BAC to discern that the individual is stumbling, smells of alcohol, and therefore is intoxicated. But there are not ordinary or obvious cues by which a lay witness can determine that an individual

19

is impaired by a particular class of drugs. Likewise, while the DRE protocol includes observation as a step, there are no observations, or ordinary or obvious cues, that, alone, can tell the officer the specific drug an individual ingested or if they are impaired. Thus, an officer can describe that an individual was shaky or sweaty, or had dilated or constricted pupils, but an officer may not comment on the drug class by which an individual is affected based solely on those observations. Therefore, the principle cited in Montgomery is distinguishable and does not control.

The City's reliance on cases where officers identified substances or offered perspectives on crime scenes is similarly misplaced. See State v. Hernandez, 85 Wn. App. 672, 678, 935 P.2d 623 (1997) (officer opinion that substance was cocaine); State v. Russell, 125 Wn.2d 24, 71, 73, 882 P.2d 747 (1994) (detective opinion on typicality of murder crime scenes); State v. Halstien, 122 Wn.2d 109, 128, 857 P.2d 270 (1993) (officer opinion that substance was semen); State v. Ferguson, 100 Wn.2d 131, 141, 667 P.2d 68 (1983) (lay witness opinion that substance was semen); Kunze, 97 Wn. App. at 857-58 (law enforcement officers' opinions on murder crime scene). None of these cases involved the type of testimony at issue here. And as discussed, this type of testimony requires specialized knowledge or experience for an expert opinion. Therefore, we are unpersuaded.

In sum, a witness must have the specialized or technical knowledge, skill, training, or education, or sufficient experience required under ER 702 to opine that an individual is affected by a particular class of drug. Thus, we hold that

20

because Officer Hinson was not DRE certified, did not complete any of the DRE steps, and lacked otherwise sufficient experience or training, the trial court abused its discretion by admitting Officer Hinson's opinion that Levesque's behavior was consistent with having taken a specific category of drugs, i.e., CNS stimulants.

<em>Impermissible Opinion of Guilt</em>

Because we conclude that Officer Hinson's testimony was otherwise inadmissible, we next review whether the testimony was an impermissible opinion on the ultimate issue of Levesque's guilt. The City contends that the testimony did not constitute an impermissible opinion of guilt. We disagree.

Under ER 704, "opinion testimony is not objectionable merely because it embraces an ultimate issue that the jury must decide." Quaale, 182 Wn.2d at 197. However, in general, "no witness may offer testimony in the form of an opinion regarding the guilt or veracity of the defendant; such testimony is unfairly prejudicial to the defendant 'because it invad[es] the exclusive province of the [jury].'" State v. Demery, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001) (alterations in original) (internal quotation marks omitted) (quoting Heatley, 70 Wn. App. at 577). "When opinion testimony that embraces an ultimate issue is inadmissible in a criminal trial, the testimony may constitute an impermissible opinion on guilt." Quaale, 182 Wn.2d at 197. We consider the circumstances surrounding the case to determine whether the testimony was an impermissible opinion of guilt, "including the following factors: '(1) the type of witness involved, (2) the specific nature of the testimony, (3) the nature of the charges, (4) the type of defense,

and (5) the other evidence before the trier of fact.'" Montgomery, 163 Wn.2d at 591 (internal quotation marks omitted) (quoting Demery, 144 Wn.2d at 759). But some testimony is "clearly inappropriate for opinion testimony in criminal trials, including . . . expressions of personal belief[ ] as to the defendant's guilt." Quaale, 182 Wn.2d at 200. The trial court's admission of such testimony may result in a constitutional error and support reversal. Quaale, 182 Wn.2d at 201-02.

In Quaale, State Patrol Trooper Chris Stone pulled Ryan Quaale over after Quaale attempted to elude him. 182 Wn.2d at 194. Trooper Stone smelled alcohol, performed an HGN test on Quaale, and observed that Quaale's eyes bounced and had difficulty tracking stimulus. 182 Wn.2d at 194. The State charged Quaale with a DUI, and at trial, Trooper Stone testified that "'[t]here was no doubt that [Quaale] was impaired'" by alcohol. Quaale, 182 Wn.2d at 195. The court concluded that Trooper Stone's testimony constituted an impermissible opinion of guilt because Trooper Stone testified as to the defendant's specific level of intoxication by referring to him as "impaired":

> The trooper's testimony that Quaale was *"impaired" parroted the legal standard contained in the jury instruction definition for "under the influence."* The word "impair" means to "diminish in quantity, value, excellence, or strength." Thus, the trooper concluded that alcohol diminished Quaale to such an appreciable degree that the HGN test could detect Quaale's impairment.

Quaale, 182 Wn.2d at 200 (emphasis added) (citation omitted). The court reasoned that "the conclusion that the defendant was impaired rests on the premise that the defendant consumed a sufficient level of intoxicants to be impaired" and that "the alcohol consumed impaired the defendant, which is the

22

legal standard for guilt." Quaale, 182 Wn.2d at 199.

The court's decision in Quaale is instructive for two reasons. First, the testimony by the trooper in Quaale is nearly identical to Officer Hinson's. In Quaale, Trooper Stone testified that there was "no doubt that [Quaale] was impaired" by alcohol. 182 Wn.2d at 195. Here, Officer Hinson testified that Levesque was "definitely impaired" by drugs. Second, the relevant jury instruction in Quaale was substantially identical to the one used here. In Quaale, the jury was instructed that "'[a] person is under the influence of or affected by the use of intoxicating liquor if the person's ability to drive a motor vehicle *is lessened in any appreciable degree.'*" 182 Wn.2d at 200 (emphasis added). Here, the instruction stated, "A person is under the influence of or affected by the use of a drug if the person's ability to drive a motor vehicle is *lessened in any appreciable degree.*" (Emphasis added.)

Quaale controls here. Like in Quaale, the primary issue before the jury was whether Levesque drove while under the influence of drugs. And like Trooper Stone, Officer Hinson opined that drugs affected Levesque to such an appreciable degree that Officer Hinson's observations alone could determine that Levesque was impaired. Finally, like in Quaale, Officer Hinson's testimony parroted the legal standard of guilt, which is properly decided by the jury. Thus, Officer Hinson impermissibly opined as to Levesque's guilt.

The City relies on Heatley for the proposition that Officer Hinson's testimony was not an improper opinion on guilt. The City's reliance is misplaced. In Heatley, the arresting officer testified that Heatley "'was obviously intoxicated

and affected by the alcoholic drink . . . [and unable to] drive a motor vehicle in a safe manner.'" 70 Wn. App. at 576. There, the testimony was not an impermissible opinion on defendant's guilt because the testimony was admissible lay opinion based on personal observations and merely supported a conclusion of Heatley's guilt. Heatley, 70 Wn. App. at 580. We emphasized that the officer did *not* parrot the legal standard. Heatley, 70 Wn. App. at 581. Furthermore, in Quaale, the court distinguished Heatley because "[u]nlike the officer in Heatley, Trooper Stone based his opinion on expert and not lay testimony, and in doing so, he gave impermissible opinion testimony that constituted an improper opinion on guilt." 182 Wn.2d at 201. The same is true here. Thus, Heatley is distinguishable and not persuasive.

### Harmless Error

The City claims that even if the trial court erred by admitting Officer Hinson's testimony, the error was harmless, and therefore, the superior court erred in reversing Levesque's conviction. We disagree.

Because Officer Hinson's testimony invaded the province of the jury to determine Levesque's guilt and thus violated his constitutional right to a fair trial, "we apply the constitutional harmless error standard." State v. Hudson, 150 Wn. App. 646, 656, 208 P.3d 1236 (2009). In a constitutional harmless error analysis, we presume prejudice. Hudson, 150 Wn. App. at 656. A "[c]onstitutional error is harmless only if the State establishes beyond a reasonable doubt that any reasonable jury would have reached the same result absent the error." Quaale, 182 Wn.2d at 202; Neder v. United States, 527 U.S. 1, 15, 119 S. Ct. 1827, 144

24

L. Ed. 2d 35 (1999).

For the following reasons, we conclude that the City has not established that any reasonable jury would have convicted Levesque. First, "[a]n officer's live testimony offered during trial, like a prosecutor's statements made during trial, may often 'carr[y] an aura of special reliability and trustworthiness'" and is "especially likely" to influence a jury. Demery, 144 Wn.2d at 762, 763 (second alteration in original) (internal quotation marks omitted) (quoting United States v. Espinosa, 827 F.2d 604, 613 (9th Cir. 1987)). Officer Hinson was the arresting officer, and he expressed certainty as to his conclusion of Levesque's impairment by drugs. Moreover, the City bolstered Officer Hinson's testimony with evidence of his experience and training, portraying particular reliability. Additionally, Officer Hinson testified first, thus framing all other evidence considered by the jury.

Second, the jury could have reached another rational conclusion. Specifically, Levesque's physician, Dr. Mayer, testified that shock can result in symptoms including "[l]ow blood pressure, rapid heart rate, fear, [and] sweating." Additionally, prior to the accident, Dr. Mayer treated Levesque for neurosyphilis and injuries resulting from earlier car accidents. She testified that neurosyphilis can cause "blurry vision." And Dr. Mayer noticed Levesque did have some word finding difficulties. She also diagnosed Levesque with postconcussion syndrome—which can cause memory loss and speech problems—and prescribed amitriptyline, a medication for postconcussion syndrome. Amitriptyline can cause grogginess and mental fogging, and can make an

individual drowsy. Dr. Mayer also testified that Levesque has a history of neurosyphilis, which may cause blurry vision and loss of motor functions. In short, Dr. Mayer's testimony may have persuaded the jury that there was another explanation for Levesque's behavior and that his ability to drive was not lessened to an appreciable degree by the drugs in his system.[6]

The additional testimonies of Gingras, Captain Franks, and Officer Coe do not establish beyond a reasonable doubt that any reasonable jury would have convicted Levesque. Captain Franks testified that Levesque's heart rate was up, he had an altered state of consciousness, and his conversational and motor skills were impaired. Captain Franks also testified that Levesque "'show[ed] behavior consistent with recreational drug use.'" But Captain Franks did not claim Levesque was affected by or, more specifically, impaired by drugs or what category of drug. Officer Coe testified that Levesque was shaky and sweaty, and that sweating indicates the potential for stimulant consumption. Gingras testified regarding the accuracy of the lab report and that the levels of methamphetamine and amphetamine in Levesque's system were higher than therapeutic levels. However, even Gingras could not determine whether the level of methamphetamine in Levesque's blood impaired him. Specifically, during closing arguments, the City noted that Gingras testified that "he can't say whether someone was impaired at .55" mg/L of methamphetamine in their system.

The City contends that Officer Hinson's statements are similar to those

---

[6] Indeed, had the DRE protocol been performed, the DRE may have been able to rule out other medical conditions. See Baity, 140 Wn.2d at 6 ("In theory, the DRE protocol enables the DRE to rule in (or out) many medical conditions, such as illness or injury, contributing to the impairment.").

admitted in State v. Smith, 67 Wn. App. 838, 841 P.2d 76 (1992). In Smith, the trial court erroneously admitted without correction statements regarding a testifying officer's awards and commendations. 67 Wn. App. at 840, 845. We concluded that the State used the testimony to "improperly elevate [the officer's] character" but that the error was harmless. Smith, 67 Wn. App. at 845. Here, Officer Hinson made a statement that directly implicated Levesque's guilt; the statement did not merely bolster his testimony. Thus, Smith is distinguishable.

For these reasons, the City cannot establish beyond a reasonable doubt that any reasonable jury would have found Levesque guilty absent Officer Hinson's testimony. Therefore, the error was not harmless.

We affirm.

_____

WE CONCUR:

_____     _____

27