IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| DANIEL S. CLARK, | No. 80273-9-I |
| Respondent, | (consolidated with 80274-7-I) |
| v. | DIVISION ONE |
| LUBA P. CLARK, | UNPUBLISHED OPINION |
| Appellant. | |
| ------------------------------------------------- | |
| DANIEL S. CLARK, | |
| Respondent, | |
| v. | |
| HOWARD S. CLARK, | |
| Appellant. | |

SMITH, J. — Luba and Howard Clark appeal the issuance of permanent stalking protection orders sought by their son, Daniel Clark.[1] Because Luba admitted to contacting Daniel on two or more occasions and because Daniel previously sent her a cease and desist letter, there was sufficient evidence for the trial court to find that Luba stalked Daniel. Similarly, because Howard previously entered into a verbal no-contact agreement with Daniel but contacted Daniel thereafter, there was sufficient evidence for the trial court to find that Howard stalked Daniel. Therefore, the trial court did not abuse its discretion when it entered either protection order. Furthermore, given the long history of

---

[1] We refer to the parties by their first names for the sake of clarity.

Citations and pin cites are based on the Westlaw online version of the cited material.

unwanted contact by both Luba and Howard, the court did not err in making the orders permanent. We affirm both orders.

FACTS

Daniel alleges that his childhood was filled with emotional and physical abuse, as well as sexual assault and rape. Daniel contends that, in one instance, Howard insisted that Daniel stay home from school after Luba "inflict[ed] bruises on [his] face." In a text message exchange, Luba acknowledged that, "a few times," she hit Daniel "too hard." Daniel alleges that, when he was young, Luba told Daniel that he could not report her abuse because Howard was a doctor. He further contends that Luba knew that his brother raped him when he was a child.

In 2011, following some personal challenges, Daniel moved back in with his parents. That same year, Luba put Daniel in "a bear hug" to prevent him from leaving. Daniel left their home, seeking to end contact. But Howard later approached Daniel in a public library, though Howard contends it was "by chance." Luba also approached Daniel in a Walmart parking lot and, at other times, placed notes on Daniel's car.

In June 2014, Howard used "a yellowpages website" to find an address that he believed to be Daniel's. With the address that Howard had found, Luba visited Daniel's residence in Seattle, Washington, and spoke with Daniel's roommate. In a signed letter, his roommate asserted that Luba disclosed that Howard had been driving past Daniel's residence, "checking out [their] place."

In December 2014, Howard sent Daniel a birthday card. Immediately

thereafter, on December 31, 2014, and January 8, 2015, Daniel served Howard and Luba with individual cease and desist letters, ordering them to stop contacting him. Howard contends that he and Luba did not "take [the] letter[s] seriously in a legal sense."

Around Father's Day in 2016, Howard called and left Daniel a voice mail. Daniel then sought a temporary protection order against Howard. In August 2016, Howard and Daniel entered into an indefinite verbal no-contact agreement, and Daniel dismissed the petition.

In March 2018, Luba texted Daniel after her mother passed away. On June 25, 2019, Howard left Daniel another voice mail. Howard alleges that he called Daniel because he has cancer.

Daniel quickly filed for stalking protection orders against Luba and Howard. With regard to Luba, Daniel alleged that she placed "notes on [his] car," confronted his friends and intimate partners, drove around his residence to monitor him, and "[s]how[ed] up at his place of residence multiple times[,] knocking on the door and refusing to leave." He stated that Luba's actions make him feel "unsafe," "trigger regression from complex PTSD [(posttraumatic stress disorder)]," cause him grief, and make him hypervigilant. With regard to Howard, Daniel alleged that Howard moved his car without his permission, located his residence, and called him multiple times. He claimed that he feels "unsafe, intimidated, harassed, stalked, and vulnerable."

The court issued temporary stalking protection orders, and for the sake of efficiency, the court heard both petitions at the same time. Daniel testified that

he preferred "a permanent [protection] order for [his] health, safety and well-being." He alleged that Luba and Howard contacted him "three times in the past few years." The court acknowledged the contradicting testimony from Daniel and his parents, but it found Daniel's evidence credible, including his contention that "he had an abused childhood, that [Howard and Luba] have hurt him physically and emotionally over a course of many years and [that they] have contacted him despite his wishes to not have contact, which has been made clear." The court found that Howard's and Luba's actions "would cause a reasonable person, given [the] long history" of continued contact and the abusive relationship, "to feel intimidated. And it did cause Daniel to feel intimidated." The court further found that Howard and Luba "either knew or should have known that this intimidation feeling would happen, even though that wasn't . . . the intent." Therefore, the court concluded that Howard and Luba stalked Daniel, and it entered the requested permanent stalking protection orders.

Luba and Howard separately appeal the court's orders.

ANALYSIS

Luba and Howard challenge the trial court's decision finding that they, individually, stalked Daniel. Because Luba and Howard each contacted Daniel on multiple occasions after he requested that they not do so and because Daniel experienced fear and intimidation, which Luba and Howard should have realized would happen, we disagree.

Under RCW 7.92.100(1)(a), the court must issue a stalking protection order "[i]f the court finds by a preponderance of the evidence that the petitioner

has been a victim of stalking conduct by the respondent." A court may find that the respondent committed stalking conduct if the respondent partook in one of three courses of conduct. Specifically, stalking conduct is defined as any act of stalking or cyberstalking[2] as defined by the corresponding criminal statutes, or

> [a]ny course of conduct involving repeated or continuing contacts, attempts to contact, monitoring, tracking, keeping under observation, or following of another that:
> (i) Would cause a reasonable person to feel intimidated, frightened, or threatened and that actually causes such a feeling;
> (ii) Serves no lawful purpose; and
> (iii) The stalker knows or reasonably should know threatens, frightens, or intimidates the person, even if the stalker did not intend to intimidate, frighten, or threaten the person.

RCW 7.92.020(4)(a)-(c).

"Whether to grant, modify, or terminate a protection order is a matter of judicial discretion." Marriage of Freeman, 169 Wn.2d 664, 671, 239 P.3d 557 (2010). "'Where the decision or order of the trial court is a matter of discretion, it will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" Freeman, 169 Wn.2d at 671 (quoting State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

### Stalking Protection Order Against Luba

The trial court did not err when it found by a preponderance of the

---

[2] Because it is clear that neither Luba nor Howard committed repeated acts of cyberstalking, we do not address this as a basis for the protection orders. See RCW 9.61.260(1) (defining the criminal standard for cyberstalking and requiring that the defendant make "an electronic communication to such other person or a third party" that is lewd, done repeatedly, or that threatens to inflict injury on the person or property).

evidence that Luba stalked Daniel under RCW 7.92.030(3)(c).[3]

Luba admitted that she (1) gave Daniel a "bear hug" in 2011 when he was trying to leave her home, (2) "attempt[ed] to contact Daniel by leaving messages," (3) went to his residence in 2014, and (4) text messaged him in March 2018. And under RCW 9A.46.110(6)(e), "'[r]epeatedly' means on two or more separate occasions." See also State v. Haines, 151 Wn. App. 428, 437, 213 P.3d 602 (2009) (holding that the stalking statute requires only two incidents of harassment). Thus, Luba satisfied the elements of repeated contacts.

In addition, a reasonable person who had experienced abuse from the contacting individual would feel intimidated or frightened by that individual's continued contact. Furthermore, Daniel showed by a preponderance of the evidence that he felt intimidated and frightened, and was hypervigilant after Luba contacted him. Finally, Luba's contact had no lawful purpose, and because Daniel provided Luba with a cease and desist letter and told Luba that he learned martial arts because of the "bear hug" she put him in, Luba should have known that contacting Daniel caused him fear or intimidated him. For these reasons, the trial court did not act manifestly unreasonable or base its decision on untenable grounds when it concluded that Luba stalked Daniel. And when a court finds by a preponderance of the evidence that stalking occurred, it must issue a protection order. Therefore, the trial court did not err.

Luba disagrees and contends that we should consider "the length of time

---

[3] Because we conclude that the trial court did not err in finding RCW 7.92.030(3)(c) satisfied, we do not address whether Luba's conduct satisfied the criminal stalking statute provided for in RCW 7.92.030(3)(a).

between contacts and the lack of notice." However, Luba cites no case law for the proposition that the court must consider the length of time between contacts. Therefore, we are not persuaded. See City of Seattle v. Levesque, 12 Wn. App. 2d 687, 697, 460 P.3d 205 ("'Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.'" (quoting DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962))), review denied, 195 Wn.2d 1031 (2020).

Similarly, Luba repeatedly alleges that her conduct and intent was "loving" as justification for her repeated attempts to contact Daniel. But the statute does not concern itself with the respondent's intent. See RCW 7.92.020(4)(c)(iii) (A court may find stalking occurred, "even if the stalker did not intend to intimidate, frighten, or threaten the person."). And given Daniel's detailed cease and desist letter to Luba, Luba should have known that her contact was unwelcome and that it caused Daniel distress. Accordingly, Luba's contention fails.

In addition, Luba asserts that the trial court conflated Howard's and Luba's conduct when it found that Luba had committed stalking. At the hearing, the court specifically noted Luba's contact with Daniel over the course of their text message conversation and after Daniel repeatedly told her not to respond or contact him again. The court further noted that Luba admitted hitting Daniel, and she admitted entering Daniel's residence without his permission. In short, there was sufficient evidence to support the trial court's determination that Luba's conduct alone constituted stalking.

<u>Stalking Protection Order Against Howard</u>

The trial court likewise did not err when it concluded that, pursuant to RCW 7.92.030(3)(c), Howard stalked Daniel.[4]

Howard admits that he (1) contacted Daniel in 2014, (2) found Daniel's address online, (3) left Daniel a voice mail in 2016, and (4) following a verbal no-contact agreement, left Daniel a voice mail message again in 2019.  Accordingly, Howard's contact with Daniel was repeated.  Furthermore, like Luba's contact, it served no lawful purpose and reasonably intimidated Daniel.  Given Howard's verbal no-contact agreement, Howard should have known that the contact intimidated or frightened Daniel.  Therefore, the trial court did not act manifestly unreasonable when it found by a preponderance of the evidence that Howard stalked Daniel, and it did not err when it entered a stalking protection order against Howard.

Howard contends that "[n]o reasonable person would experience fear under the circumstances described by Daniel" because Howard's contact with Daniel was loving.  However, the trial court found by a preponderance of the evidence that Daniel was credible and that he actually felt fear and intimidation. It also found that a reasonable person, given Daniel's recollection of his childhood and how his father covered up his mother's abuse, would feel that way. Therefore, as was the case with Luba, a reasonable person would be frightened and intimidated, and we are not persuaded.

---

[4] Because we conclude that the trial court did not err in finding RCW 7.92.030(3)(c) satisfied, we do not address whether Howard's conduct satisfied the criminal stalking statute provided for in RCW 7.92.030(3)(a).

## Protection Order Length

Finally, Luba and Howard contend that the trial court erred when it issued a permanent protection order. We disagree.

"[A] final stalking protection order shall be effective for a fixed period of time or be permanent." RCW 7.92.130(1). As the issuance of a protection order is a matter of discretion, so is the length of such order.

Here, the trial court based the issuance of the permanent protection order on the "long period of conduct" committed by Luba and Howard. It further noted the continued contact by both Howard and Luba after they received individualized cease and desist letters and after Daniel made it clear that he did not want any further contact from either of them. Specifically, for nearly 10 years, Luba and Howard separately contacted Daniel despite his clear request for them to stop. For these reasons, we cannot conclude that the issuance of a permanent protection order in either case was manifestly unreasonable or based on untenable grounds.

We affirm.

_Smith, J._

WE CONCUR:

_Bowman, J_          _Andrus, A.C.J._