208 P.3d 1236 (2009)
STATE of Washington, Respondent,
v.
Eugene HUDSON, Appellant.
No. 36642-8-II.
Court of Appeals of Washington, Division 2.
June 2, 2009.
*1237 Michelle Bacon Adams, Attorney at Law, Port Orchard, WA, for Appellant.
Russell Duane Hauge, Jeremy Aaron Morris, Kitsap County Prosecutor's Office, Port Orchard, WA, for Respondent.

PART PUBLISHED OPINION
ARMSTRONG, J.
¶ 1 Eugene Hudson appeals his third degree rape conviction, arguing that the trial court improperly allowed two experts to opine as to his guilt. We agree and, therefore, reverse his conviction and remand for a new trial. Hudson raises other evidentiary issues; we address only those likely to arise on retrial.

FACTS
¶ 2 One evening, Hudson and his wife,[1] Nicole Tillis, went to the home of Jonathan and Lisa McHenry to socialize. Krystal Whitcher, another friend of Lisa McHenry and Tillis, was also there. The group consumed alcohol together for a couple hours, then went to a bar where they continued drinking until the bar closed. Several of the group went to Taco Bell for some food; Whitcher and Hudson may have flirted while they sat together in the back seat of the car. Afterwards, the group returned to the McHenry residence, and Lisa McHenry drove Whitcher home at about 3:00 a.m.
¶ 3 At about 4:00 a.m., Hudson drove to Whitcher's residence. He told Whitcher that "there was a lot of cops out" so he "didn't feel comfortable out on the road." Report of Proceedings (RP) at 365. She invited him in to watch television until he felt better. A vaginal and anal sexual encounter ensued on a futon in Whitcher's living room. Hudson eventually fell asleep on the futon until around 8:00 a.m., then left.
¶ 4 The next morning, Whitcher called Lisa McHenry and told her what had happened. Lisa McHenry drove Whitcher to the hospital for a sexual assault examination. Nora Mary Sullivan, a sexual assault nurse examiner (SANE), examined Whitcher and documented her findings in Whitcher's medical chart.
¶ 5 The State charged Hudson with three counts of rape. Count One was for second degree rape relating to the anal penetration. Counts Two and Three related to vaginal penetration, one for second degree rape and the other for third degree rape.
¶ 6 The State introduced testimony by two expert SANE witnesses. One was Sullivan, who had examined Whitcher. The other was Jolene Mae Culbertson, who was the clinical coordinator of the SANE program at the hospital and had prepared a summary report based on Sullivan's examination. Hudson objected to the use of two witnesses, arguing that their testimony would be cumulative under ER 403 because both witnesses would say the same thing. The trial court overruled the objection.
¶ 7 The State called Culbertson first. She testified that she had reviewed Sullivan's written recording of Whitcher's account of what happened. The prosecutor asked her to relate the history Whitcher had given; the defense objected on hearsay grounds. The trial court overruled the objection because Whitcher's statements to Sullivan fell within the medical diagnosis or treatment exception and Sullivan's written report fell within the medical business records exception. Culbertson then paraphrased Sullivan's reported history:
Krystal Whitcher reported that she had been out with friends. She went home. There was a knock on her door, and she opened the door. And it was the husband of a friend of hers. He said that he was uncomfortable because the police were following him, so he didn't feel comfortable driving and wanted to stay there. And she allowed him to stay there. She turned on the TV. He turned off the TV and pushed her down on a futon. And she started screaming. He said, "Just relax. It will be okay." And he attempted to penetrate her vaginally, and then turned her over *1238 and penetrated her anally. And then turned her back over and penetrated her vaginally. And the entire time she was screaming, "No. No." And he said, "Just relax. It will be okay."
RP at 242-43.
¶ 8 During cross examination, defense counsel called attention to certain variations between Culbertson's paraphrase and Sullivan's report. On redirect examination, the prosecutor asked Culbertson to read Sullivan's narrative verbatim. Hudson objected, but the trial court overruled the objection under the "rule of completeness." RP at 327. Culbertson read:
We all went out last night (friends) somebody came to my door about 4 a.m., it was my friend's husband. He said he was trying to drive home but the police were following him. So I said he could crash on the couch. I turned the TV on. He said turn it off and pulled me over close to him. I told him no, that I was friends with his wife. He pushed me down on my face on the futon. I started screaming and told him, no. I started screaming and he told me to just relax, that I'd be okay. It was hurting, and I screamed a lot. Then he turned me on my back and did it again. Then on my stomach so he could finish. I think he pulled out before he finished. He kept telling me to relax, that I'd be okay. I kept screaming. Afterwards I waited until I thought he was asleep because his legs were still on me. I was afraid. Then I went into my room and waited until he left this morning and called my friend.
Clerk's Papers (CP) at 327-28.
¶ 9 Because Culbertson had comprehensively testified regarding Sullivan's report, the defense renewed its motion to exclude Sullivan's testimony as cumulative. The trial court allowed the testimony because Sullivan had been the treating medical provider and could therefore testify about what she had actually observed. Later, the prosecutor clarified the differences between Sullivan's and Culbertson's testimony: Sullivan would testify from her examination about the details of Whitcher's injuries; Culbertson had (1) offered expert opinions based on the photographs Sullivan had taken and (2) Whitcher's account of the assault.
¶ 10 When the State asked Culbertson, "Are the injuries that you observed in these photographs consistent with Krystal Whitcher's report of nonconsensual sex?" Hudson objected, arguing that the question called for opinion testimony that invaded the jury's province. RP at 257. The trial court overruled the objection, relying on State v. Jones, 59 Wash.App. 744, 801 P.2d 263 (1990). Culbertson testified that her opinion "as to the nature and cause of [Whitcher's] injuries" was that they were "extensive injury related to nonconsensual sex." RP at 311.
¶ 11 Sullivan testified that she took colposcopic photographs of Whitcher's injuries and drew a "trauma-gram" of them. RP at 447. Vaginal lacerations ranged from 2.3 to 8 millimeters, which Sullivan characterized as "very significant" as well as "quite deep." RP at 476. Whitcher's anal lacerations ranged from 2.9 to 11 millimeters, which Sullivan testified "were very, very significant" and "would have been excruciatingly painful." RP at 477. There was also significant swelling around the anus caused by trauma.
¶ 12 Defense counsel objected when the State asked Sullivan, "Would you expect to see the type of injuries that you noted in Miss Whitcher in a consensual encounter?" RP at 484. The trial court overruled the objection, and Sullivan answered, "No." RP at 484. She also testified that in her SANE experience, it was not common to see the extent of injury that she saw in Whitcher. Sullivan concluded over objection that "this was a very traumatic nonconsensual . . . penetration." RP at 485.
¶ 13 The jury acquitted Hudson of Counts Two and Three and convicted him on Count One of the lesser included offense of third degree rape. The trial court sentenced Hudson to thirteen months' imprisonment.

ANALYSIS
¶ 14 Hudson challenges several of the trial court's evidentiary rulings. We review such rulings for an abuse of discretion. In re Pers. Restraint of Davis, 152 Wash.2d *1239 647, 691, 101 P.3d 1 (2004). A trial court abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons, i.e., if the court relies on unsupported facts, takes a view that no reasonable person would take, applies the wrong legal standard, or bases its ruling on an erroneous view of the law. State v. Lord, 161 Wash.2d 276, 283-84, 165 P.3d 1251 (2007).

Expert Opinions Regarding Consent
¶ 15 Hudson argues that Culbertson and Sullivan improperly opined that he was guilty when they testified that Whitcher's injuries were caused by nonconsensual sex. The State responds that the testimony related only to causation and was not an opinion as to Hudson's guilt.

A. Impropriety of Opinions

¶ 16 An expert opinion is not objectionable merely because it "embraces an ultimate issue to be decided by the trier of fact." ER 704. But a witness may not offer an opinion as to the defendant's guilt, either by direct statement or by inference. State v. Montgomery, 163 Wash.2d 577, 591, 183 P.3d 267 (2008) (citing State v. Demery, 144 Wash.2d 753, 759, 30 P.3d 1278 (2001) (plurality opinion)); State v. Black, 109 Wash.2d 336, 348, 745 P.2d 12 (1987). Such an opinion violates the defendant's "inviolate" constitutional right to a jury trial, which vests in the jury "`the ultimate power to weigh the evidence and determine the facts.'" Montgomery, 163 Wash.2d at 590, 183 P.3d 267 (quoting Wash. Const. art. 1, § 21, and James v. Robeck, 79 Wash.2d 864, 869, 490 P.2d 878 (1971)). Whether testimony constitutes an impermissible opinion about the defendant's guilt depends on the circumstances of the case, including (1) the type of witness involved, (2) the specific nature of the testimony, (3) the nature of the charges, (4) the type of defense, and (5) the other evidence before the trier of fact. Montgomery, 163 Wash.2d at 591, 183 P.3d 267 (quoting Demery, 144 Wash.2d at 759, 30 P.3d 1278).
¶ 17 This case is similar to State v. Black, in which the Supreme Court reversed a rape conviction for improper opinion testimony on the defendant's guilt. Black, 109 Wash.2d at 349-50, 745 P.2d 12. In Black, the defendant admitted engaging in sexual intercourse with the alleged victim, but he contended that she had consented to it. Black, 109 Wash.2d at 338, 745 P.2d 12. An expert psychologist testified that the alleged victim suffered from "rape trauma syndrome," which the Supreme Court held "carrie[d] with it an implied opinion that the alleged victim is telling the truth and was, in fact, raped." Black, 109 Wash.2d at 349, 745 P.2d 12. And given that there was no suggestion of any other sexual encounter in the relevant time period, the expert's opinion that the victim was raped "constitutes, in essence, a statement that the defendant is guilty of the crime of rape." Black, 109 Wash.2d at 349, 745 P.2d 12.
¶ 18 Here, the SANE experts explicitly testified that Whitcher's injuries were caused by nonconsensual sex, i.e., rape.[2]See RCW 9A.44.060(1)(a). And because Whitcher had no sexual encounters other than with Hudson, who did not dispute that their encounter caused her injuries, these opinions amounted to statements that he was guilty of rape. Under Black, the opinions were improper.
¶ 19 The trial court relied on State v. Jones, 59 Wash.App. 744, 801 P.2d 263 (1990), to rule that opinion testimony regarding "consensual versus nonconsensual" was acceptable. RP at 280. Jones does not stand for that proposition. In that case, a defendant charged with the manslaughter of a baby claimed that he accidentally caused the fractured skull that killed the child. *1240 Jones, 59 Wash.App. at 746, 801 P.2d 263. The State offered testimony by two doctors that the baby's death was caused by "a non-accidental blunt injury" that was "sustained by some sort of inflicted manner, whether it be an object, including a hand or a fist." Jones, 59 Wash.App. at 747-48, 801 P.2d 263. On appeal, the defendant claimed that the witnesses had given improper opinions on guilt because they were based solely on his credibility. Jones, 59 Wash.App. at 748, 801 P.2d 263. We affirmed, holding that neither witness based his opinion on any witnesses' testimony; rather, they based it on inferences from the physical evidence found during the autopsy. Jones, 59 Wash.App. at 749, 801 P.2d 263. But because the defendant's argument was based solely on credibility, Jones is not applicable.
¶ 20 Even if Jones were applicable, it is distinguishable. The experts stopped one step short of what the State elicited here. The Jones' experts testified that the victim's injuries were most likely not "accidental." Jones, 59 Wash.App. at 747, 801 P.2d 263. Here, the experts did not limit their testimony to whether the victim's injuries were caused by blunt force; they testified that the sexual encounter was not consensual  the essence of the rape charge and the only disputed issue. In addition, the Jones court specifically noted that the doctors' opinions in that case were "helpful to the jury" under ER 702 because they were beyond the common knowledge of the average layperson. Jones, 59 Wash.App. at 751, 801 P.2d 263. The same is not true in this case where the nurses' sole reason for believing Whitcher had not consented was that the sex must have been extremely painful. Such reasoning is not based in medical or any other specialized knowledge and can easily be done by the average layperson.[3]
¶ 21 Finally, the State argues that the nurses' opinions in this case were admissible because they constituted "expert testimony regarding the cause of physical injuries." Br. of Resp't at 22 (emphasis omitted). We agree that medical experts generally may give their opinions on the cause of injuries, but this rule does not allow them to testify that the defendant committed the charged crime.[4] Furthermore, in this case, it was undisputed that Whitcher's injuries were medically "caused" by her sexual encounter with Hudson. Deciding whether Whitcher had consented was not necessary to that determination.
¶ 22 The trial court abused its discretion in admitting the SANE witnesses' opinion that Whitcher's injuries were caused by nonconsensual sex.

*1241 B. Harmless Error

¶ 23 Because improper opinions on guilt invade the jury's province and thus violate the defendant's constitutional right, we apply the constitutional harmless error standard set forth in State v. Guloy, 104 Wash.2d 412, 425, 705 P.2d 1182 (1985), to determine if the error was harmless. State v. Thach, 126 Wash.App. 297, 312-13, 106 P.3d 782 (2005). We presume that constitutional errors are prejudicial, and the State must convince us beyond a reasonable doubt that any reasonable jury would have reached the same result absent the error. State v. Watt, 160 Wash.2d 626, 635, 160 P.3d 640 (2007); Thach, 126 Wash.App. at 313, 106 P.3d 782 (quoting Guloy, 104 Wash.2d at 425, 705 P.2d 1182). This test is met if the untainted evidence presented at trial is so overwhelming that it leads necessarily to a finding of guilt. Watt, 160 Wash.2d at 636, 160 P.3d 640; Thach, 126 Wash.App. at 313, 106 P.3d 782.
¶ 24 The State does not attempt to show that admitting the improper opinion testimony was harmless. And because the case turned on whether the jury believed Hudson or Whitcher, we cannot find the error harmless. See State v. Barr, 123 Wash.App. 373, 384, 98 P.3d 518 (2004) (constitutional error not harmless because "[a]t its heart, the ultimate issue here revolved around an assessment of the credibility of [defendant] and [victim]"). We therefore reverse and remand for a new trial.
¶ 25 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
I concur: BRIDGEWATER, J.
PENOYAR, A.C.J.
¶ 30 I respectfully dissent. I find the analysis of State v. Jones compelling, and see no significant difference between the expert testimony in that case and the nurses' testimony in this case. 59 Wash.App. 744, 747-48, 801 P.2d 263 (1990).
¶ 31 Here, the nurses stated that they thought the victim's injuries were the product of a nonconsensual sexual encounter. They did not indicate that Hudson was responsible for the injuries, and thus, they did not comment on his guilt.
¶ 32 It appears to me that both nurses testified to a subject well within their area of expertise. Neither testified that they believed the victim's account of events, nor did they indicate a belief that the defendant was responsible for the injuries. Instead, they provided an analysis of the physical evidence, related the extent of the victim's injuries, explained how and why nonconsensual sex may result in injury and offered an opinion on whether the pain that would result from injuries such as those suffered by the victim was consistent with her consenting to the sexual activity, all based on their training and experience.
¶ 33 The majority indicates that we should also reject the nurses' evaluation because their conclusion was based "solely" on the amount of pain the victim would have experienced. They state that "[s]uch reasoning is not based in medical or any other specialized knowledge and can easily be done by the average layperson." Majority at 1240. However, Culbertson's statement on the amount of pain experienced was based on her professional knowledge and experience with various sexual encounters. She testified that her expertise and opinion was based on viewing and evaluating hundreds of sexual assault victims. True, pain is a highly subjective sensation, but a juror would likely not know what level of pain accompanies various injuries. Culbertson's testimony was perfectly within the realm of appropriate expert testimony. Further, Sullivan never testified that her conclusion was based on level of pain. Sullivan's conclusion was based on the number, and severity, of lacerations as well as her "training and experience, [] review of the photographs and of [the victim's] chart, [and] the information in the chart." Report of Proceedings (RP) at 485. As with Culbertson's testimony, Sullivan's was well within the realm of appropriate expert testimony.
NOTES
[1] Hudson and Tillis are not legally married, but are referred to as husband and wife throughout the record.
[2] The dissent asserts that the SANEs opined only that the evidence was consistent with nonconsensual sex. Dissent at 1241. We agree with the dissent that if this were the case, the testimony would probably have been proper under Montgomery, 163 Wash.2d at 592-93, 183 P.3d 267. However, the testimony was far more direct. Culbertson testified that "the nature and cause of [Whitcher's] injuries" was that "[t]hey're extensive injury related to nonconsensual sex." RP at 311. Sullivan testified that "this was a very traumatic nonconsensual . . . penetration." RP at 485. These are overt and unambiguous opinions that Whitcher was raped. Compare with Black, 109 Wash.2d at 348, 745 P.2d 12 (rape trauma syndrome diagnosis improperly implied that victim had, in fact, been raped).
[3] We do not hold, as the dissent suggests, that it was improper for the SANEs to testify about the amount of pain Whitcher suffered from her injuries. Dissent at 1241. As experienced medical professionals, the SANEs were certainly qualified to testify as to Whitcher's level of pain from their training and experience. The conclusion that is not appropriate, however, is in connecting the medical issue of pain to the legal issue of consent. That inquiry is for the trier of fact alone.
[4] None of the cases that the State cites in its brief suggests otherwise. Two of them are pre-ER 704 cases in which the court addressed the now obsolete inquiry of whether an expert opinion on causation was an improper opinion on ultimate facts. State v. Richardson, 197 Wash. 157, 84 P.2d 699 (1938) (doctor could opine from appearance of a body that the person's hands had been tied in murder case); State v. Mooradian, 132 Wash. 37, 231 P. 24 (1924) (doctor described injuries sustained by child in child rape case and opined as to how they might have been inflicted). One does not involve an opinion on the cause of injuries at all. State v. Read, 100 Wash.App. 776, 779, 998 P.2d 897 (in response to assertion that shooting was accidental, medical examiner testified regarding angle of the gun from bullet's trajectory saying "it is reasonable that the decedent was sighting right down the gun when it went off."), rev'd on other grounds, 142 Wash.2d 1007, 13 P.3d 1065 (2000). Others do not address whether the opinions are of guilt. State v. Toennis, 52 Wash.App. 176, 185, 758 P.2d 539 (1988) ("battered child syndrome" as cause of death is a well-recognized medical diagnosis and is not within common knowledge of jurors); State v. Mulder, 29 Wash.App. 513, 515-16, 629 P.2d 462 (1981) (same, citing ER 702). In others, the experts' opinions were not of guilt because their conclusions were not inconsistent with the defendant's theory of the case. See State v. Cunningham, 23 Wash.App. 826, 854, 598 P.2d 756 (1979) (opinion was the same as that of defendant's expert), rev'd on other grounds, 93 Wash.2d 823, 613 P.2d 1139 (1980). And the rest of the cases are not applicable. State v. Borsheim, 140 Wash.App. 357, 374-75, 165 P.3d 417 (2007) (issue was whether opinion was a manifest constitutional error because not objected to below).