IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Respondent,<br><br>      v.<br><br>REBECCA JOHNSON,<br><br>               Appellant. | No. 80364-6-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, J. — Rebecca Johnson appeals her conviction for driving under the influence (DUI). Following a reported domestic disturbance, Snohomish County Sheriff's Deputy Jonathan Krajcar found Johnson in a running vehicle on one side of the property where the incident was reported to have occurred. After Deputy Krajcar smelled alcohol and Johnson told him that she had had a drink that day, Johnson volunteered to perform field sobriety tests (FSTs). At trial, Deputy Krajcar testified to Johnson's results, asserting that, during the FSTs, Johnson showed many signs of intoxication. He also testified that FSTs are "scientifically validated to be able to detect impairment" and that, based on his observations and experience, Johnson had driven while impaired.

On appeal, Johnson contends that Deputy Krajcar's testimony constitutes an improper opinion on guilt, properly reserved for the jury. Because Deputy Krajcar opined to the scientific validity of the FSTs, we conclude that this testimony was inadmissible and improper. However, his testimony that Johnson

Citations and pin cites are based on the Westlaw online version of the cited material.

was impaired was based on his observations and therefore was not improper. Moreover, the evidence presented at trial was so overwhelming that the jury would have found Johnson guilty without the testimony regarding the scientific validity of the FSTs. Therefore, we affirm.

FACTS

On April 1, 2017, Snohomish County dispatch received a call regarding a verbal domestic dispute at a farm. At around 1:45 p.m., Deputy Krajcar responded to the call and found Johnson alone in the driver's seat of a vehicle parked "in the back of the property." The vehicle was running, and Deputy Krajcar later testified that it did not appear that the vehicle had been parked for very long. When Deputy Krajcar asked Johnson what she was doing, she told him that she had driven the car from the front of the property to the rear of the property.

Deputy Krajcar later testified that, while speaking with Johnson, he "could smell the odor of intoxicants or alcohol coming from her," that "[h]er eyes were bloodshot and watery," and that "her speech was slurred." Deputy Krajcar also testified that Johnson told him that she had one shot of vodka at 8:30 a.m. For these reasons, Deputy Krajcar asked Johnson if she would be willing to perform standardized FSTs. Johnson consented.

At trial, Deputy Krajcar demonstrated the FSTs with the prosecutor. He testified that, during the first FST, the horizontal gaze nystagmus (HGN) test, he observed six out of six clues for impairment. The next FST was "the one leg stand." Deputy Krajcar testified that Johnson also showed signs of impairment in

this FST, including raising her arms, swaying, and putting her foot down twice. During the walk and turn FST, Deputy Krajcar observed four out of eight clues of impairment, including stepping off of the line and taking one step too many.

Based on the results of the FSTs, his observations, and his experience as a Drug Recognition Expert (DRE), Deputy Krajcar arrested Johnson for a DUI. Johnson later took a breath test, which resulted in a .05 blood alcohol concentration (BAC) level, below the statutory limit of .08 BAC.[1]

Before trial, the State moved to admit Deputy Krajcar's opinion testimony that Johnson was impaired. The State asserted that it would "avoid using the language that tracks to the jury instructions as that would invade the province of the jury." Johnson asserted in response, "[W]ith this objection, I think we have effectively been reserving it depending on how the testimony comes out." The court noted that Johnson could object during the course of trial if Deputy Krajcar used impermissible language. The court also granted Johnson's motion to exclude reference to the reporting party's statement to Deputy Krajcar.

At trial, Deputy Krajcar testified that FSTs are "scientifically validated to be able to detect impairment." Johnson objected to this testimony, which the trial court overruled. Deputy Krajcar testified that he had administered FSTs "hundreds" of times. He opined that Johnson "was driving the vehicle and was impaired." In another instance, he testified that Johnson "had consumed alcohol," had driven, and "was impaired." He testified that his opinion was "[b]ased upon [his] observations of [Johnson], her slurred speech, bloodshot,

_____

[1] The BAC results were not admitted at trial.

3

watery eyes, lethargic behavior as well as her performance on the standardized [FSTs]." He reiterated later at trial, "Based upon everything that I saw, smelled, heard, I believe she was impaired."

The jury convicted Johnson.

Johnson appealed to the Snohomish County Superior Court. The superior court concluded that the State produced proof sufficient to satisfy Johnson's conviction. It also held Deputy Krajcar's testimony was not an improper opinion on Johnson's guilt. Johnson sought discretionary review in this court, which we granted.

ANALYSIS

Preservation of Issue for Appeal

As an initial matter, the State claims that Johnson failed to preserve her challenge to Deputy Krajcar's testimony that she was impaired. While we agree, we exercise our discretion to review the unpreserved error.

"The appellate court may refuse to review any claim of error which was not raised in the trial court." RAP 2.5(a). "Under ER 103(a)(1), when an error is raised based on admitting evidence, the adverse party must make 'a timely objection or motion to strike . . . [and] stat[e] the specific ground of objection, if the specific ground was not apparent from the context.'" City of Seattle v. Levesque, 12 Wn. App. 2d 687, 695, 460 P.3d 205 (alterations in original), review denied, 195 Wn.2d 1031 (2020).

When the State asked Deputy Krajcar if he had formed an opinion regarding whether Johnson had been driving a vehicle that day, Johnson

4

objected to the question based on its foundation. The trial court overruled her objection. After, the State and Deputy Krajcar had the following exchange:

Q: What was your opinion?
A: That she was driving the vehicle and was impaired.
Q: Okay. Could you summarize for the jury what led you to believe the defendant was driving a vehicle that day?
. . . .
A: Based upon my conversation with the original reporting party, Ms. Johnson's statements to me that she had been driving, and the - -

Johnson objected again. When the court asked what testimony she wanted struck from the record, she responded, "The response that his belief . . . was based on statements from the reporting party." Johnson objected based on the trial court's ruling to exclude the reporting party's statements. Thus, Johnson did not properly object to Deputy Krajcar's opinion that she was driving and impaired. However, we may review an unpreserved error on appeal. See RAP 2.5(a). Accordingly, we exercise our discretion and review the merits of Johnson's assertion.

<u>Admissibility of Deputy Krajcar's Testimony</u>

Johnson asserts that the trial court erred in admitting (1) Deputy Krajcar's testimony regarding the scientific validity of the FSTs and (2) his opinion testimony that she was driving and impaired. While we agree that the testimony regarding the scientific validity of the FSTs was improper, Deputy Krajcar was allowed to opine, based on his observations, that Johnson was impaired.

We review the admission of opinion testimony for abuse of discretion. State v. Demery, 144 Wn.2d 753, 758, 30 P.3d 1278 (2001). And opinion testimony must be deemed admissible by the trial court before it is offered. State

v. Montgomery, 163 Wn.2d 577, 591, 183 P.3d 267 (2008). To determine whether such testimony constitutes "impermissible opinion testimony, the court will consider the circumstances of the case, including the following factors: '(1) the type of witness involved, (2) the specific nature of the testimony, (3) the nature of the charges, (4) the type of defense, and (5) the other evidence before the trier of fact.'" Montgomery, 163 Wn.2d at 591 (internal quotation marks omitted) (quoting Demery, 144 Wn.2d at 759).

However, Washington courts have "held that there are some areas that are clearly inappropriate for opinion testimony in criminal trials," including "expressions of personal belief, as to the guilt of the defendant." Montgomery, 163 Wn.2d at 591. "Impermissible opinion testimony regarding the defendant's guilt may be reversible error." State v. Quaale, 182 Wn.2d 191, 199, 340 P.3d 213 (2014). But "[t]estimony in the form of an opinion or inferences otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." ER 704.

Two cases guide our analysis. First, in City of Seattle v. Heatley, Officer Patricia Manning observed Robert Heatley speeding and straddling the center lane with his vehicle. 70 Wn. App. 573, 575, 854 P.2d 658 (1993). When Officer Manning pulled Heatley over, she believed Heatley was intoxicated and called the Driving While Impaired (DWI) unit. Heatley, 70 Wn. App at 575-76. DWI unit Officer Mark Evenson had Heatley perform a series of FSTs: reciting the complete alphabet, counting backward from 59, balancing, and walking a straight line. Heatley, 70 Wn. App. at 576. At trial, Officer Evenson opined,

> "Based on . . . his physical appearance and my observations . . .
> and based on all the tests I gave him as a whole, I determined that
> Mr. Heatley was obviously intoxicated and affected by the alcoholic
> drink . . . . [And] he could not drive a motor vehicle in a safe
> manner."

Heatley, 70 Wn. App. at 576. Heatley was convicted. Heatley, 70 Wn. App. at 577. On appeal, we held that Officer Evenson's testimony, which was based on his experience and observations, was admissible lay opinion testimony. Heatley, 70 Wn. App. at 579-80.

Second, in Quaale, State Patrol Trooper Chris Stone pulled over Ryan Quaale. 182 Wn.2d at 194. Trooper Stone performed an HGN test on Quaale and observed that Quaale's eyes bounced and had difficulty tracking stimulus. Quaale, 182 Wn.2d at 194. The State charged Quaale with a DUI, and at trial, Trooper Stone, testifying as an expert witness, opined, "There was no doubt [Quaale] was impaired." Quaale, 182 Wn.2d at 195. Our Supreme Court held that Trooper Stone's testimony was inadmissible because he completed only 1 of the 12 DRE steps, the HGN test, and because he cast his opinion in "an aura of scientific certainty." Quaale, 182 Wn.2d at 198-99. Specifically, the court observed that Trooper Stone's testimony was cast in absolute terms and gave the appearance that the HGN test produces scientifically certain results. Quaale, 182 Wn.2d at 198-99. The court also concluded that the testimony that Quaale was "impaired" necessarily and improperly indicated a specific level of intoxication, which the HGN test alone could not reveal. Quaale, 182 Wn.2d at 198-99.

Here, the State charged Johnson with a DUI. Deputy Krajcar testified

7

based on his experience as an officer, including his training as a DRE and his training under the National Highway Traffic Safety Administration's Advanced Roadside Impaired Driving Enforcement. Deputy Krajcar opined that, based on his observations and experience, Johnson was impaired by alcohol. He also testified that Johnson told him that she had drunk alcohol that morning and had driven the vehicle. Deputy Krajcar's testimony was the only evidence presented at trial. And Johnson presented no defense.

Like in Heatley, Deputy Krajcar's could opine as to Johnson's intoxication. See also Montgomery, 163 Wn.2d at 591 ("A lay person's observation of intoxication is an example of a permissible lay opinion."). Unlike in Quaale, Deputy Krajcar did not base his opinion on a single FST but conducted three FSTs, and he did not base his testimony on the scientific validity of the FSTs. Indeed, Deputy Krajcar testified multiple times that his opinion was based on his personal observations, including what he saw and smelled. Thus, his testimony that, based on his observations, "[Johnson] was impaired" was not improper.

However, like the trooper's testimony in Quaale, Deputy Krajcar's testimony that the FSTs are "scientifically validated to be able to detect impairment" was improper because it presented an aura of scientific reliability regarding the FSTs. Deputy Krajcar also testified that "[t]here's [sic] been many scientific studies validating" FSTs' ability to determine how alcohol might affect a person's performance. Deputy Krajcar highlighted, three times, the scientific validity of the FSTs. Because of the persuasive nature of officer testimony and because a defendant has the constitutional right for a jury to decide the ultimate

8

issue of guilt, we conclude that the testimony regarding the scientific validity of the FSTs was improper.

Harmless Error

Johnson asserts that Deputy Krajcar's improper opinion violated her "constitutional right to have a fact critical to her guilt determined by the jury" and constitutes reversible error. Because Deputy Krajcar's testified to what he observed and because Johnson herself had admitted to drinking and driving, we disagree.

Deputy Krajcar's improper testimony regarding the scientific validity of the FSTs invaded the province of the jury in determining guilt and violated Johnson's constitutional right to a fair trial. Thus, "we apply the constitutional harmless error standard." State v. Hudson, 150 Wn. App. 646, 656, 208 P.3d 1236 (2009). In a constitutional harmless error analysis, we presume prejudice. Hudson, 150 Wn. App. at 656. And a "[c]onstitutional error is harmless only if the State establishes beyond a reasonable doubt that any reasonable jury would have reached the same result absent the error." Quaale, 182 Wn.2d at 202. "This test is met if the untainted evidence presented at trial is so overwhelming that it leads necessarily to a finding of guilt." Hudson, 150 Wn. App. at 656.

"An officer's live testimony offered during trial . . . may often 'carr[y] an aura of special reliability and trustworthiness'" and is "especially likely" to influence a jury. Demery, 144 Wn.2d at 762-63 (some alterations in original) (internal quotation marks omitted) (quoting United States v. Espinosa, 827 F.2d 604, 613 (9th Cir. 1987)). Deputy Krajcar was the only witness at trial, and he

9

testified regarding the scientific validity of the FSTs. However, he properly testified regarding sensory observations that any lay individual would notice as signs of impairment and would draw inferences therefrom regarding the individual's impairment. Specifically, "[t]he effects of alcohol 'are commonly known and all persons can be presumed to draw reasonable inferences therefrom.'" Heatley, 70 Wn. App. at 580 (quoting State v. Smissaert, 41 Wn. App. 813, 815, 706 P.2d 647 (1985)). To this end, Deputy Krajcar testified that he smelled "the odor of intoxicants or alcohol coming from [Johnson]," that her eyes were blood and watery, and that "her speech was slurred."

Similarly, the testimony regarding what he witnessed during the FSTs involved evidence that a lay witness would interpret as signs of intoxication. Deputy Krajcar testified that during the one leg stand test, Johnson "raised her arms . . . , she swayed, and she put her foot down twice." He also testified that during the walk and turn test, Johnson took one step too many, stepped off the line on her eighth step, and missed placing her heel to her toe several times. Furthermore, he testified that Johnson had difficulty counting to 15 and that it took her 30 seconds, that she was overall lethargic, and that her movements were slow. He based his conclusion "upon [his] observations of [Johnson], her slurred speech, bloodshot, watery eyes, lethargic behavior[,] as well as her performance on the standardized [FSTs]."

Most importantly, Deputy Krajcar testified to Johnson's statements that (1) she began drinking at 8:30 a.m. that day and had one shot and (2) she drove to the back of the property. Deputy Krajcar contended that what he saw and

10

smelled was not consistent with having had only one shot of vodka. Any reasonable juror would have concluded that Johnson was guilty, despite Deputy Krajcar's improper opinion testimony and based only on the untainted evidence. Therefore, we conclude that the error in his testimony was harmless.

For the foregoing reasons, we affirm.

WE CONCUR: