IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>     Respondent,<br><br>  v.<br><br>MICHAEL DAVID HERRERA,<br><br>     Appellant. | No. 81129-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, J. — Michael Herrera assaulted Leigh Orlando-Ward outside of a marijuana dispensary in Seattle, Washington, after Orlando-Ward and Herrera's wife, Chelsea Crowley, had an argument. At trial, Herrera alleged that he feared for Crowley's safety and reacted to protect her. An eye witness testified that Herrera's assault on Orlando-Ward was "[a]n unnecessary beat down." In addition, the prosecutor disparaged Herrera, questioning whether he could count during cross-examination. The jury did not accept Herrera's defense that he used the force necessary to protect Crowley and found him guilty of second degree assault. At sentencing, the State included a conviction that Herrera received as a juvenile, and the sentencing court imposed community custody fees.

Herrera appeals, asserting that the eye witness impermissibly opined to his guilt and that the prosecutor's statements were improper. We agree on both accounts. However, because there was video evidence of the incident, the errors were harmless. And with regard to the inclusion of the juvenile conviction,

Citations and pin cites are based on the Westlaw online version of the cited material.

the judgment and sentence was valid on its face and properly included in Herrera's sentencing score. Given that the court erred in imposing community custody supervision fees, we affirm Herrera's conviction but remand to the sentencing court to strike those fees.

FACTS

On February 19, 2018, Herrera and Crowley went to a marijuana dispensary in Seattle. Crowley parked the vehicle, and Herrera went inside the shop. After a couple of minutes, Leigh Orlando-Ward pulled his truck into the parking spot next to Crowley's. Both cars were parked outside of the designated parking lines, at skewed angles. Crowley exited her vehicle in anger and approached Orlando-Ward. She yelled at Orlando-Ward for his poor parking job, and Orlando-Ward insulted her.

Nonetheless, when Crowley walked away, Orlando-Ward reparked his truck. Crowley entered the shop and told Herrera, "[B]abe, come help. Some guy's messing with me." Herrera testified that Crowley looked scared. She left the shop, and Herrera followed her out. Herrera alleges that he heard Orlando-Ward yell at Crowley and call her an inappropriate name.

As Orlando-Ward walked toward the shop, Crowley exited the shop, and the two met face-to-face. Herrera walked up behind Crowley, punched Orlando-Ward in the face, and continued to do so even after Orlando-Ward fell to the ground. Orlando-Ward's girlfriend, Cassidy Wolff, was in the passenger seat of Orlando-Ward's truck. When she saw what was happening, she exited the truck and pushed Herrera away. Herrera and Crowley got into her vehicle and drove

away.  A video camera at the dispensary captured Crowley and Orlando-Ward's exchange and the assault.

Orlando-Ward called the police and provided them with Crowley's license plate number.  He suffered from multiple facial fractures.  Specifically, Herrera's assault on Orlando-Ward fractured his cheekbone, orbital floor, alar rim, and four other bones connected to his cheekbone.  Orlando-Ward later underwent maxillofacial surgery in order to reconstruct a portion of his face.  He suffers from permanent nerve damage and chronic sinus headaches.

In May 2018, Seattle Police Department went to Crowley's apartment following their investigation into the assault.  Crowley, Herrera, and their son were at the apartment.  The detectives brought Herrera in for questioning.  During questioning, Herrera asserted that Orlando-Ward pushed and shoved Crowley, contending, "I [saw] him pushing her."  He told the detectives, "All I did was push that guy down."

The State charged Herrera with second degree assault.  At trial, Herrera asserted that he acted lawfully in defense of Crowley.

The State showed the video to the jury.  In the video, it does not appear that Orlando-Ward shoved Crowley.  However, it shows him pointing to her car aggressively.

David Bradley, an eye witness, testified at trial.  Bradley was in the parking lot across the street when he witnessed the assault.  He testified that he saw someone fall down, and "the next thing [he] saw was somebody beating the living crap out of him on the ground."  When the State asked what he would call the

3

event, Bradley characterized it as "[a]n unnecessary beat down."

Herrera testified in his defense, asserting that he hit Orlando-Ward to protect Crowley and did not stop until she was safely inside their car. He explained, "I hit him because I thought he had attacked my wife." He testified that he told Crowley to drive away when he saw Orlando-Ward reach for his pocket, believing that he was reaching for a gun.

On cross-examination, the prosecutor questioned Herrera about the video:

Q:    Now he went straight to the ground when you punched him, correct?
A:    Yes.
Q:    And then while he was on the ground, you hit him at least 17 more times, correct?
A:    I'm not sure the count, but yes.
Q:    Would you like to watch and count them?
A:    No, I --
Q:    I'm going to ask you to count them.
A:    I wouldn't be able to from here, nor if I was up at the screen.
Q:    Do you not know how to count?
          [DEFENSE COUNSEL]:  Your Honor, objection, Your Honor. That's improper.
          [COURT]:  Sustained. Why don't you just play the video, if that's what you were going to do. I can't see the screen.
Q:    (By Mr. Carlstrom) All right. Mr. Herrera, please do your best to let us know how many times you punched Mr. Orlando-Ward after he went to the ground.
A:    (By Mr. Herrera) I would say about 17 times.
Q:    I thought you couldn't count to 17.
A:    I never said --
          [DEFENSE COUNSEL]:  Your Honor --
A:    (By Mr. Herrera) -- I couldn't count.
          [DEFENSE COUNSEL]:  -- objection. That is just offensive and improper.
          [COURT]:  All right.
          MR. HERRERA:  It is.
          [COURT]:  Overruled, go ahead.

The court provided the jury the instruction for the lawful use of force in defense of others. The jury did not accept this defense and found Herrera guilty

4

of second degree assault.

Prior to sentencing, the State's presenting report calculated Herrera's offender score as 8. It included a juvenile conviction for "to elude police." However, Herrera's attorney did not challenge that conviction and said, "I am not challenging the State's ability to prove up the . . . convictions." The court agreed with the State's calculation of Herrera's offender score. It sentenced him to the high-end of the standard range. However, it found Herrera indigent and imposed only mandatory legal financial obligations (LFOs) and restitution. Nonetheless, the judgment and sentence includes form language that requires Herrera to pay community custody supervision fees.

Herrera appeals.

ANALYSIS

Eye Witness Testimony

Herrera asserts Bradley's testimony constituted an impermissible opinion of guilt. We agree.

We review the admission of opinion testimony for abuse of discretion. State v. Quaale, 182 Wn.2d 191, 196, 340 P.3d 213 (2014). "A lay opinion is admissible only if it is 'rationally based on the perception of the witness' and 'not based on scientific, technical, or other specialized knowledge." City of Seattle v. Levesque, 12 Wn. App. 2d 687, 704, 460 P.3d 205 (quoting ER 701 (a), (c)), review denied, 195 Wn.2d 1031 (2020). "Put another way, lay testimony must be based on 'knowledge . . . from which a reasonable lay person could rationally infer the subject matter of the offered opinion.'" Levesque, 12 Wn. App. 2d at

5

704 (alteration in original) (quoting State v. Kunze, 97 Wn. App. 832, 850, 988 P.2d 977 (1999)).

Under ER 704, "opinion testimony is not objectionable merely because it embraces an ultimate issue that the jury must decide." Quaale, 182 Wn.2d at 197. However, "[w]hen opinion testimony that embraces an ultimate issue is inadmissible at a criminal trial, the testimony may constitute an impermissible opinion on guilt." Quaale, 182 Wn.2d at 197. "To determine whether a statement constitutes [impermissible] opinion testimony, a court considers the type of witness, the specific nature of the testimony, the nature of the charges, the type of defense, and the other evidence before the trier of fact." State v. Rafay, 168 Wn. App. 734, 805-06, 285 P.3d 83 (2012). "Impermissible opinion testimony regarding the defendant's guilt may be reversible error." Quaale, 182 Wn.2d at 199.

Bradley's testimony commented on the necessity of Herrera's actions. Bradley testified, "[T]he next thing I saw was somebody beating the living crap out of [Orlando-Ward] on the ground." He opined that it was "[a]n unnecessary beat down." But Herrera asserted that his use of force was necessary to protect Crowley. And the court instructed the jury:

> A person is entitled to act on appearances in defending another, if he believes in good faith and on reasonable grounds that another is in actual danger of injury, although it afterwards might develop that the person was mistaken as to the extent of the danger. Actual danger is not necessary for the use of force to be lawful.

And necessary was defined as, "under the circumstances as they reasonably

6

appeared to the actor at the time, (1) no reasonably effective alternative to the use of force appeared to exist and (2) the amount of force was reasonable to effect the lawful purpose intended."

Bradley's opinion that the "beat down" was "unnecessary" went to a key issue of fact for the jury to decide, i.e., whether Herrera acted reasonably in response to the perceived threat to Crowley. Where a witness's opinion parrots the language of a key instruction, it may constitute an impermissible opinion. See, e.g., Quaale, 182 Wn.2d at 195, 200 (holding that an officer's testimony was an improper opinion testimony where, among other issues, the officer's opinion mirrored the legal standard of guilt provided in the jury instructions). Given the nature of the charge, second degree assault, and Herrera's defense, lawful defense of another, Bradley's opinion that Herrera's use of force was unnecessary constituted impermissible opinion testimony. However, Bradley's testimony does not establish a reversible error.

Because impermissible opinion testimony invades the province of the jury by commenting on the defendant's guilt and offends their constitutional right to a fair trial, "'we apply the constitutional harmless error standard.'" Levesque, 12 Wn. App. 2d at 711 (quoting State v. Hudson, 150 Wn. App. 646, 656, 208 P.3d 1236 (2009)). "In a constitutional harmless error analysis, we presume prejudice." Levesque, 12 Wn. App. 2d at 711. And a "[c]onstitutional error is harmless only if the State establishes beyond a reasonable doubt that any reasonable jury would have reached the same result absent the error." Quaale, 182 Wn.2d at 202.

Quaale is instructive here. State Patrol Trooper Chris Stone pulled over Ryan Quaale after Quaale evaded him, lost control of his vehicle, and "skidd[ed] into a homeowner's yard." Quaale, 182 Wn.2d at 194. Trooper Stone believed that Quaale was intoxicated. Quaale, 182 Wn.2d at 193. However, Quaale refused to take a breath test, and Trooper Stone only performed one sobriety test, a horizontal gaze nystagmus test (HGN). Quaale, 182 Wn.2d at 194-95. The State charged Quaale with felony driving under the influence. Quaale, 182 Wn.2d at 195. During trial, Trooper Stone testified "in an aura of scientific certainty" based on the HGN test that "he had 'no doubt'" that Quaale was impaired. Quaale, 182 Wn.2d at 198-99. Our Supreme Court concluded that the testimony was impermissible opinion testimony. Quaale, 182 Wn.2d at 199. It reversed Quaale's conviction, concluding that the only evidence that Quaale was impaired, beyond his poor driving, was Trooper Stone's testimony. Quaale, 182 Wn.2d at 202.

Here, Bradley's characterization of the incident aside, each juror was fully capable of discerning the necessity of the force Herrera used. Unlike the jury in Quaale, which had to rely solely on Trooper Stone's testimony of Quaale's impairment, here, the jury did not have to rely on Bradley's opinion to form a belief on Herrera's guilt and the necessity of his use of force. Instead, the jurors could watch the video evidence and objectively assess the circumstances. There is no doubt that any reasonable jury would have reached the same result.

Herrera disagrees and asserts that Bradley's testimony compares to the

testimony at issue in State v. George[1] and State v. Sargent.[2] Both cases are dissimilar. In George, the witness testified that the defendants were the individuals in the surveillance video offered at trial based on minimal encounters. 150 Wn. App. at 119. In Sargent, a detective opined that he thought the defendant knew his wife was dead when the defendant responded, "'[Y]ou mean something happened to [my wife]?'" 40 Wn. App. at 350. The detective thus opined the defendant lied. Sargent, 40 Wn. App. at 351. George is distinguishable because Bradley was not providing an opinion that the jury could not make for itself based on the video. And Sargent is distinguishable because, there, the detective opined to the defendant's veracity and the State's evidence was not overwhelming, as it is here. Thus, we do not find these cases persuasive.

### Prosecutorial Misconduct

Herrera asserts that the prosecutor's statements regarding his ability to count were improper. We agree that the comments were improper but conclude that Herrera fails to show any prejudice.

We review allegations of prosecutorial misconduct for an abuse of discretion. State v. Lindsay, 180 Wn.2d 423, 430, 326 P.3d 125 (2014). "To prevail on a claim of prosecutorial misconduct, a defendant must show first that the prosecutor's comments were improper and second that the comments were prejudicial." State v. Warren, 165 Wn.2d 17, 26, 195 P.3d 940 (2008).

---

[1] 150 Wn. App. 110, 206 P.3d 697 (2009).
[2] 40 Wn. App. 340, 698 P.2d 598 (1985).

Our first inquiry therefore is whether the prosecutor's comments were improper. Lindsay, 180 Wn.2d at 431. Incivility on the part of the attorneys at trial can "threaten[ ] the fairness of the trial, not to mention public respect for the courts." Lindsay, 180 Wn.2d at 432. Here, the State concedes that the prosecutor's comments were improper, and we agree. The prosecutor disparaged Herrera's intelligence and mocked him, stating, "I thought you couldn't count to 17." Even reading this from a cold record, the prosecutor's sarcasm and derision are obvious. And although the comments attempted to attack Herrera's credibility, they were inappropriate and improper. Therefore, Herrera succeeds on the first prong.

However, the comments did not prejudice Herrera. To show prejudice, the defendant "must show a substantial likelihood that the prosecutor's statements affected the jury's verdict." Lindsay, 180 Wn.2d at 440. "In analyzing prejudice, we do not look at the comments in isolation, but in the context of the total argument, the issues in the case, the evidence, and the instructions given to the jury." Warren, 165 Wn.2d at 28.

Given the weight of the evidence presented, Herrera fails to show the prosecutor's inappropriate remarks prejudiced him. See Warren, 165 Wn.2d at 29 (concluding that the weight of the evidence supported the defendant's conviction and prevented any prejudice from the prosecutor's improper comments). In particular, although the prosecutor sarcastically attacked Herrera's credibility with his question, Herrera's inconsistent statements to the detectives before and after he knew that there was a video of the altercation

sufficiently undermined his credibility. The comments also did not attack Herrera's defense and were isolated. And as discussed above, the video evidence allowed the jury to come to their own conclusion regarding the assault. Thus, Herrera does not show there is a substantial likelihood that the comments affected the jury's verdict. See, e.g., State v. Negrete, 72 Wn. App. 62, 67-68, 863 P.2d 137 (1993) (holding that the prosecutor's improper comment impugning defense counsel, although inappropriate, did not result in prejudice where the State presented substantial evidence against the defendant and the remark was isolated). In short, the statements did not prejudice Herrera and were harmless.

Cumulative Error

Herrera contends that the cumulative errors demand that we reverse his conviction and remand for a new trial. We disagree.

"'The cumulative error doctrine applies where a combination of trial errors denies the accused a fair trial even where any one of the errors, taken individually, may not justify reversal.'" State v. Song Wang, 5 Wn. App. 2d 12, 31, 424 P.3d 1251 (2018) (quoting In re Detention of Coe, 175 Wn.2d 482, 515, 286 P.3d 29 (2012)). "But because any errors did not affect the outcome of the trial, the cumulative error doctrine does not apply." Rafay, 168 Wn. App. at 838.

For the foregoing reasons, we affirm Herrera's conviction.

Offender Score

Herrera challenges the inclusion of a juvenile conviction in his offender score. We conclude that the court correctly calculated his offender score.

"It is well established that the State has the burden to prove prior

11

convictions at sentencing by a preponderance of the evidence." State v. Hunley, 175 Wn.2d 901, 909-10, 287 P.3d 584 (2012). "While the preponderance of the evidence standard is 'not overly difficult to meet,' the State must at least introduce 'evidence of some kind to support the alleged criminal history.'" Hunley, 175 Wn.2d at 910 (quoting State v. Ford, 137 Wn.2d 472, 480, 973 P.2d 452 (1999)). However, "a sentence in excess of statutory authority is subject to collateral attack, . . . a sentence is excessive if based upon a miscalculated offender score (miscalculated upward), and . . . a defendant cannot agree to punishment in excess of that which the legislature has established." In re Pers. Restraint of Shale, 160 Wn.2d 489, 494, 158 P.3d 588 (2007).

Herrera stated he was not challenging the at-issue juvenile conviction. However, on appeal, he asserts a legal challenge to the juvenile conviction's judgment and sentence: that it is invalid on its face. Such a challenge is nonwaivable. See In re Pers. Restraint of Goodwin, 146 Wn.2d 861, 875-76, 50 P.3d 618 (2002) (holding that the defendant could not waive a challenge to a miscalculated offender score that asserts and proves that a judgment and sentence was invalid on its face). And contrary to the State's contention, Shale does not control here because Shale involved factual challenges to the defendant's convictions. And the court discerns the validity of those factual challenges employing its discretion. See Shale, 160 Wn.2d at 494 ("[W]aiver can be found where the alleged error involves an agreement to facts, later disputed, or where the alleged error involves a matter of trial court discretion.").

Here, the judgment and sentence stated only that the conviction was for

"to elude the police." Herrera asserts that the judgment and sentence was invalid because it did not provide that the offense was "Attempting to elude police vehicle—Defense—License revocation," as set out in RCW 46.61.024. In support of his assertion, Herrera cites a number of cases that are inapplicable. See In re Pers. Restraint of Hinton, 152 Wn.2d 853, 857-58, 100 P.3d 801 (2004) (in addressing a personal restraint petition, holding that the defendants could attack their convictions where they were convicted of a crime that did not exist); In re Pers. Restraint of Thompson, 141 Wn.2d 712, 719, 10 P.3d 380 (2000) (holding that where the crime did not exist, judgment and sentence was facially invalid). The crime of eluding police did exist, even if the judgment and sentence lacked the precise statutory title of the crime. This is not a case where the crime for which he was convicted did not exist, and it appears disingenuous to assert as much. Therefore, we are not persuaded. The judgment and sentence was facially valid, and Herrera's offender score was correctly calculated.

Supervision Fees

As a final matter, Herrera asserts that the trial court erred when it imposed DOC supervision fees. The record in this case reflects that the trial court intended to waive all discretionary LFOs. And where the trial court intended to waive all discretionary LFOs, remand is appropriate to strike the boilerplate language requiring a defendant to pay DOC supervision fees. See State v. Dillon, 12 Wn. App. 2d 133, 152, 456 P.3d 1199 (remanding for the trial court to strike DOC supervision fees where "[t]he record demonstrate[d] that the trial court intended to impose only mandatory LFOs"), review denied, 195 Wn.2d

1022 (2020). Accordingly, we remand for the trial court to strike the imposition of these fees.

We affirm Herrera's judgment and sentence but remand for the trial court to strike its imposition of supervision fees.

_____

WE CONCUR:

_____        _____